STATE, GARRET A. LYDECKER ET AL., PROSECUTORS, v. THE DRAINAGE AND WATER COMMISSIONERS OF THE TOWNSHIP OF ENGLEWOOD.

1. A political district, to whose boundaries a general tax may be confined, is a division of the state with its inhabitants, organized for the public advantage, and not in the interest of particular individuals or classes, the chief design of which is the exercise of governmental functions, and to the electors residing within which is, to some extent, committed the power of local government.

2. The act constituting the defendants, (*Pamph. L.*, 1875, *p.* 522,) does not create such a district.

On *certiorari*.

Argued at June Term, 1878, before Justices VAN SYCKEL, DIXON and REED.

For the prosecutors, *G. H. Coffey* and *F. McGee.*

For the defendants, *Ashbel Green* and *J. P. Stockton*, Attorney-General.

The opinion of the court was delivered by

DIXON, J.    The *certiorari* in this case brings up the proceedings of the defendants under the statute creating them a

board of commissioners, entitled "An act to provide for sewerage and drainage, and for introducing pure water in the township of Englewood, county of Bergen," approved April 8th, 1875. *Pamph. L., p.* 522.

A radical objection is interposed to these proceedings, upon the ground that the statute just mentioned is unconstitutional in a feature so important that the whole grant of power connected with it is vitiated, and all the acts of the board in pursuance of that grant are unlawful. The general provisions of the statute, so far as they need now be examined, are that it designates a portion of the township of Englewood as the "sewerage, drainage and water district of the township of Englewood," dividing it into three sections; that it constitutes a board of seven commissioners, two to be residents and freeholders in each section, and one to be a resident freeholder in the township of Englewood, who are to be elected every five years by the male and female residents of the township, owning land in fee simple within the district; that this board is to prepare plans and estimates of main and tributary sewers for the drainage of the district, which main sewers may extend into the neighboring township of Ridgefield, and upon the approval, by the majority of the before-mentioned freeholders voting thereupon, of the plan of main sewers, and of the issuing of district bonds to pay for constructing the same, the board is to build these main sewers and issue bonds to raise funds for that purpose; that these bonds are to be a charge upon all the real estate within the district, and are to be met, principal and interest, by a tax upon such estate, to be levied by the township assessor and collected by the township collector, as are ordinary taxes; and that the general expenses of the board are also to be paid by a like land tax.

Under these enactments the board is now proceeding with the construction of main sewers, according to an approved plan, and has issued $15,000 worth of bonds. One of the prosecutors is a freeholder and a resident of Ridgefield township, whose land there will be intersected by one of the proposed sewers; the other three are residents and freeholders of

the district, whose lands will also be intersected, and will be subject to the land tax which the statute directs. The claim of the prosecutors is, that the tax, being confined within narrower boundaries than those of a political division of the state, and not being graduated by the peculiar benefits which the land may derive from the sewers, is therefore unconstitutional, and that, as no other means than this tax are provided for defraying the necessary expense of the work in which the defendants are engaged, that work should be arrested as unlawful.

It must be regarded as settled in this state that the legislature has no power to impose a tax upon any territory narrower in bounds than the political district of which it is a part, without having regard to the special benefits which may accrue to those upon whom it is made to fall. *State, Baldwin, pros.,* v. *Fuller,* 10 *Vroom* 576 ; *S. C.,* 11 *Vroom* 615.

Nor, I think, is the other proposition any more disputable, at least in this court, that where the legislature has organized a special body for a specific public work, the cost of which is to be raised in a manner expressly pointed out, and that manner is found to be unconstitutional, and no other lawful means of defraying the expense exists, the right of the body to act fails, and its proceedings will be set aside. *State, Gaines, pros.,* v. *Hudson County Avenue Commissioners,* 8 *Vroom* 12 ; *State, McClosky, pros.,* v. *Chamberlain,* 8 *Vroom* 388 ; *Coster* v. *Tidewater Co.,* 3 *C. E. Green* 54, 518.

The defendants are therefore driven to the only position upon which a decision adverse to their claim has not been already rendered by this court, that the district wherein the tax is to be levied is, by the statute, made a political district, and hence the tax is constitutional.

The political divisions of the state are those which are formed for the more effectual or convenient exercise of political power within the particular localities. Originally, counties and townships, in which a uniform state policy is observable, composed this class almost or quite exclusively. Then, as population became denser in certain places, and there was

added to this common design a special necessity for local gov-
ernment different from that proper to more rural districts,
villages, towns and cities were constituted, and, as these were
separated by their charters of incorporation from the townships
of which they had before been part, and absorbed their func-
tions, they also became political divisions.   In these institu-
tions, therefore, must be discovered the essential characteristics
of their class, and they will be such common and prominent
features as have co-existed with these organizations through-
out their history, and are not possessed by other bodies of
legislative creation which stand outside of the same category.
These distinctive marks are, I think, that they embrace a
certain territory and its inhabitants, organized for the public
advantage, and not in the interest of particular individuals
or classes; that their chief design is the exercise of govern-
mental functions, and that to the electors residing within each
is, to some extent, committed the power of local government,
to be wielded either mediately or immediately, within their
territory, for the peculiar benefit of the people there residing.
Bodies so constituted are not merely creatures of the state, but
parts of it, exerting the powers with which it is vested for
the promotion of those leading purposes which it was intended
to accomplish, and according to the spirit which actuates our
republican system.   They are themselves commonwealths, and
therefore are properly entrusted with the sovereign power of
taxation to meet their own necessities.

The statute under which the defendants are acting does not
establish such an organization.   The board of commissioners
is constituted a corporation, and is invested with some control
over a defined territory, but with the inhabitants of that terri-
tory, as such, it has no concern.   It is formed, not for the
public advantage, but in the interest of a particular class—the
land owners of the district.   Its chief end is not the govern-
ment of the persons and things within its territory, but mere
land improvement at the expense of the land, either by general
tax or special assessment; and the electors of the district have
no voice whatever in its corporate affairs, the choice of com

missioners and the approval of plans devolving on the owners of the land alone. The fifteenth section of the act does, indeed, give to the board some police powers for the abatement of nuisances which sewerage may remedy, but this grant is manifestly only an incident to the prevalent idea, running through the statute, of improving the condition of the land.

My conclusion therefore is, that this statute does not create a political district; that, consequently, the general tax which it aims to authorize is unconstitutional, and that, the right to tax failing, the power to build the main sewers and drains, which rests upon it, is so imperfect that it also must fail.

The proceedings of the commissioners for the construction of these main sewers and drains are therefore set aside.