THE AMERICAN PIG IRON STORAGE COMPANY v. THE STATE BOARD OF ASSESSORS.

56 389
60 69
56 389
66E 382

1. The prosecutor was incorporated by a certificate filed under the General Corporation act. *Rev., p.* 180. The certificate set out that the total amount of the capital stock was to be $1,500,000, divided into fifteen thousand shares, of the par value of $100 each. Subscriptions were made for the whole amount of the capital stock set out in the certificate. Upon the stock subscribed for, two assessments of five per cent. each, amounting to $150,000, were made and were paid by the subscribers. No certificates of stock had been given to the subscribers, but receipts were given for the assessments that were paid. The company elected its directors and officers, and, with the capital stock paid in, has engaged in the business for which it was organized. *Held,* that the company was liable to taxation pursuant to section 4 of the act of March 17th, 1892 (*Pamph. L., p.* 139), on the full amount of the stock subscribed for as capital stock "issued and outstanding," within the meaning of the act.

2. Neither certificates of stock nor payment of the par value of the shares in full are necessary to confer on the subscribers the rights and privileges of stockholders in the organization and management of the company. In all the legislation on this subject, subscribers for stock are regarded as stockholders.

3. In a popular sense, a corporation is said to issue stock when it obtains subscriptions for it, and in the construction of tax laws words are to be interpreted in their popular sense.

---

On *certiorari.* In matter of taxation.

Argued at November Term, 1893, before Justices DEPUE, VAN SYCKEL and REED.

For the prosecutor, *Allan L. McDermott.*

*Contra, William Y. Johnson.*

The opinion of the court was delivered by.

DEPUE, J.    By section 4 of the act to provide for the imposition of state taxes upon certain corporations, &c., approved April 18th, 1884, after enumerating certain corporations and providing the method of taxing those corporations, it was enacted "that all other corporations incorporated under the laws of this state and not hereinbefore provided for shall pay a yearly license fee or tax of one-tenth of one per centum on the amount of the capital stock of such corporations." *Rev. Sup., p.* 1017.    This section was amended and re-enacted by an act passed March 16th, 1891 (*Pamph. L., p.* 151), and again by an act passed March 17th, 1892.    *Pamph. L., p.* 139. In the act of 1892 the part of the act of 1884 above quoted, was amended to read as follows : "All other corporations incorporated under the laws of this state    *    *    *    shall pay an annual license fee or franchise tax of one-tenth of one per centum on all amounts of capital stock issued and outstanding up to and including the sum of three million dollars ; on all sums of capital stock issued and outstanding in excess of three million dollars and not exceeding five million dollars, an annual license fee or franchise tax of one-twentieth of one per centum, and the further sum of fifty dollars per annum per one million dollars, or any part thereof, on all amounts of capital stock issued and outstanding in excess of five million dollars."       .

The prosecutor is a corporation taxable under the clause of the act of 1892 above quoted.    The tax assessed was for the year 1893.    It was assessed by the state board of assessors. upon a capital of $1,500,000.    The contention of the prosecutor is that this assessment was illegally made.    The controversy has arisen out of the substitution in the act of 1892 of the words " capital stock issued and outstanding " for the words " capital stock," in the act of 1884.

The prosecutor was incorporated pursuant to the tenth and eleventh sections of the General Corporation act.  *Rev., p.* 179.  Section 11 of that act provides the method of incorporating by a certificate which shall set out, among other things, the total amount of the capital stock of such company, the number of shares into which the same is divided and the par value of each share, and the names and residences of the stockholders and the number of shares held by each.  This certificate is required to be recorded in the office of the county clerk and filed in the office of the secretary of state.  Upon the recording and filing of the certificate, the persons so associating, &c., become incorporated.  *Rev., p.* 180, § 13.

The certificate by which this company was organized was in conformity with the statute.  It set out that the total amount of the capital stock of said company is to be $1,500,000, divided into fifteen thousand shares, of the par value of $100 each, and the amount of the capital stock with which said company shall commence business is $1,300,000, divided into ten thousand three hundred shares, of the par value of $100 each.  The names and residences of the stockholders and the number of shares held by each are as follows, to wit, giving the names of stockholders, twenty-two in number, the residence of each and the number of shares held by each, aggregating ten thousand three hundred shares.  The proof in the case is that stock to the amount of $1,500,000 was subscribed for.  Upon the stock so subscribed for two assessments of five per cent. each, amounting to $150,000, have been made and were paid by the subscribers.  The contention is that capital stock subscribed for is not "capital stock issued and outstanding" within the meaning of the act of 1892.  This contention is founded upon the fact that the subscriptions to the capital stock have not been fully paid up and that no certificates of stock have been given to the subscribers.

The certificate of incorporation was recorded in the Hudson county clerk's office November 28th, 1888, and in the office of the secretary of state on the same day.  The company was organized by the election of officers the latter part of the same

month, and commenced business in May, 1889, and is still conducting its business.

The General Corporation act, under which this company was organized, treats the persons named in the certificate as the stockholders who hold the shares of the company's capital stock, and throughout the act persons who have become subscribers for stock are regarded as stockholders. By section 38 the managers and directors are to be elected by the stockholders, and each stockholder is at such election entitled to one vote for each share of stock held by him. By section 47 no one is eligible to the office of director unless he be a *bona fide* holder of stock. The books of the corporation are made conclusive evidence of the right of a person to vote as a stockholder, and are *prima facie* evidence of the qualifications for the office of director. *In re St. Lawrence Steamboat Co.*, 15 *Vroom* 529. Nowhere in the act is there the faintest indication that payment in full of the par value of the stock subscribed for is a condition precedent to the *status* of a stockholder. On the contrary, the act contemplates that the companies organized under its provisions may organize, elect officers and transact business with a capital less than the total amount of the capital stock, provided the amount of capital paid in be not less than $1,000. Provision is made by section 27 for assessments upon shares from time to time, in such sums as two-thirds of the stockholders in interest shall direct, not to exceed in the whole the sum at which each share was limited by section 11.

Nor is a certificate of stock necessary to consummate the ownership by a subscriber of the shares of stock he subscribes for, in respect to which he has complied with the terms on which subscriptions were received under the charter and by-laws of the company. Capital stock is the sum fixed by the charter as the amount paid in, or to be paid in, by the stockholders for the prosecution of the business of the corporation, and for the benefit of the creditors of the corporation. *Cook Stock.*, § 3. A share of stock represents the right which its owner has in the management and profits of the corporation.

*Id.,* § 5. The rights and obligations as between the subscribers and the corporation spring from the subscription for ·stock.

A subscription to stock imports a promise by the subscriber to pay the face value of the shares of stock subscribed for, in compliance with assessments lawfully made, for the recovery ·of which the corporation may maintain a suit at law. *Grosse Isle* v. *I'Anson,* 13 *Vroom* 10 ; *Braddock* v. *P., M. & M. R. R. Co.,* 16 *Id.* 363. And such subscriptions constitute a trust fund for the payment of the debts of the corporation. *Wetherbee* v. *Baker,* 8 *Stew. Eq.* 501. A certificate of the number ·of shares subscribed for, or to which the subscriber is entitled, is not necessary to constitute the subscriber a shareholder, or to impose upon him a liability to pay the amount of his sub- ·scription. The certificate is merely an additional and convenient evidence of his ownership of stock which he may require for his own satisfaction, or to enable him to effect a transfer of his interest. A subscriber for stock who has complied with the terms of his subscription, and has paid the assessments on the shares subscribed for, may compel the corporation to give him a certificate by proceedings at law, and without any certificate being issued he is amenable to an action ·by the creditors of the corporation to compel him to contribute ·his proportional part for the payment of the debts of the cor- ·poration. *Cook Stock.,* §§ 9, 192, and note 4 ; *Farrer* v. *Walker,* 3 *Dill.* 506 ; *Burr* v. *Wilcox,* 22 *N. Y.* 591 ; *Wheeler* ·v. *Miller,* 90 *Id.* 353. For each one of the assessments upon ·the shares of stock subscribed for a receipt was given by the ·treasurer of this corporation. These receipts were a sufficient ·voucher for the right of the subscribers to stock and evidence ·that they became stockholders—the holders of the shares of ·stock subscribed for.

In the brief submitted by the counsel of the prosecutor ·considerable stress is laid upon the difference in the verbiage ·of the act of 1884 and part of the act of 1892. By several ·acts passed in 1878, 1879 and 1885 (*Rev. Sup.,* pp. 151, 152), ·incorporated companies were empowered to increase or decrease

their capital stock. In amending the fourth section of the act of 1884 by the act of 1892, the words "issued and outstanding" were inserted after the words "capital stock," with a view to adapt that section more clearly to such changes in the capital stock of these corporations. This verbal change in expression made no material alteration in the meaning of the law. The word "issued" as used in this connection has no technical meaning. "To issue," as defined by lexicographers, signifies to send out, to put in circulation. In a popular sense, a corporation engaged in organization is said to issue stock when it obtains subscriptions for it, and in the construction of tax laws words are to be interpreted in their popular sense. *Evening Journal Association* v. *State Board*, 18 *Vroom* 36. This construction harmonizes with, and indeed is required by, the General Corporation act, which recognizes the subscribers for stock as holders of the shares subscribed for, with all the privileges conferred and subject to all the liabilities imposed upon stockholders.

In construing statutes imposing taxes, as well as other statutes, the object and purpose of the legislature will control, and such a construction will be made, if permissible by the language of the enactment, as will give effect to the legislative intent. The tax and license fees required to be paid by the act of 1892 are exacted by the state for the privilege of exercising the corporate franchises which are granted. Immediately on recording the certificate prescribed by the statute the corporation becomes organized, and on the paying in of capital to the amount of $1,000 the company is authorized to transact business and to exercise all the corporate franchises expressed in the certificate. The company is not required to call in the full amount of capital subscribed, and subscribers for the shares of the stock are under no compulsion to obtain certificates for the shares of stock for which they subscribe. In the meantime the company may lawfully exercise all its franchises, and if the view of the prosecutor be correct, may do so without paying the tax and license fee which the act contemplates shall be paid for the exercise of those franchises..

The construction of the act contended for by the prosecutor is not tenable. In fact, this company was engaged in the prosecution of its business so far as the managers were enabled to obtain business or thought it prudent to embark therein, and was actually in the exercise of. the franchises acquired by recording and filing its certificate of incorporation. The company was, therefore, at the time of this assessment, in the exercise of those franchises, for the privilege and right to exercise which the franchise tax and license fees assessed were imposed. If actual exercise and enjoyment of the franchises derived from the incorporation be necessary to entitle the state to exact the tax and license fee therefor (which I am unwilling at this time to concede), that condition appears in this case.

The assessment was lawfully made and should be affirmed.