HERKIMER LUMBER COMPANY, Respondent, *v.* THE STATE OF
NEW YORK, Appellant.

Fourth Department, May 4, 1921.

**State — not liable for damages resulting from suspension of lumber-
ing operations on request of Attorney-General nor from suspension
through injunction secured by Attorney-General where action
dismissed on merits — Code of Civil Procedure, § 264, does not
foreclose State from contesting liability.**

The State of New York is not liable to the plaintiff for damages resulting
from its suspension of lumbering operations on the request of the Attorney-
General, though the request was based on the erroneous belief that the
plaintiff at the time was lumbering on State land.

Likewise the State is not liable for damages resulting from the suspension
of operations compelled by a temporary injunction granted without an
undertaking in an action by the Attorney-General to restrain the plaintiff
from lumbering on land claimed to belong to the State though the action
was subsequently dismissed on the merits; liability cannot be predicated
on section 1990 of the Code of Civil Procedure.

Section 264 of the Code of Civil Procedure confers jurisdiction on the
Court of Claims to hear and determine private claims against the State
but it does not thereby foreclose the State from contesting its liability.

APPEAL by the defendant, The State of New York, from
a judgment of the Court of Claims in favor of the plaintiff,
entered in the office of the clerk of said court on the 15th day
of January, 1919, with notice of intention to bring up for
review the intermediate order entered in said clerk's office
on the 8th day of January, 1919, denying defendant's motion
to dismiss the amended claim, and also to bring up for review
the intermediate order entered in said clerk's office on the
8th day of January, 1919, denying defendant's motion to vacate
an order allowing an amendment of the plaintiff's claim,
and also to bring up for review the intermediate order entered
in said clerk's office on the 8th day of January, 1919, denying
defendant's motion to strike out the amendment granted by
an order entered in the office of said clerk on the 27th day
of November, 1918, and also from an order entered in said
clerk's office on the 27th day of November, 1918, granting
plaintiff's motion to amend its claim.

*Charles D. Newton, Attorney-General [Adelbert F. Jenks, Deputy Attorney-General,* and *John O. Bates, Assistant Deputy Attorney-General,* of counsel], for the appellant.

*Snyder, Cristman & Earl [C. E. Snyder* of counsel], for the respondent.

CLARK, J.:

In January, 1911, plaintiff filed with the Court of Claims a verified claim for damages in the amount of $73,017.96 and interest, alleged to have been sustained by it by reason of the State's interfering with certain lumber operations in which it was engaged on lands the title to which was in dispute between the parties.

Claimant urged that its business had been interrupted by the action of the Attorney-General of the State in sending a telegram requesting claimant to cease its lumbering operations on the disputed property, and in subsequently obtaining an injunction restraining it from such operations.

The case was tried in the Court of Claims and judgment, based on certain findings of fact and conclusions of law, was entered in favor of claimant and against the State on the 15th day of January, 1919, for $107,880.35 damages, including interest. Defendant appeals from that judgment.

For a long time the boundary line between the counties of Herkimer and Hamilton had been in dispute, and in 1905 claimant owned timber on lands in township 41 of Totten and Crossfield's purchase.

The State owned all of township 41 except that part lying west of the line between Herkimer and Hamilton counties known as the "Koetteritz" line. In 1903 State Engineer Bond had run a line further west than the "Koetteritz" line, and a man named Wood, acting for the State, had run still another line further west than the Bond line.

In 1905 claimant was engaged quite extensively in lumbering on lands lying west of the Bond and Wood lines, and it claimed that the "Koetteritz" line was the true line between the counties of Hamilton and Herkimer, and that it was entitled to cut timber up to that line.

The State, on the other hand, claimed that the true line

was further west, and at a point indicated by the so-called Bond line.

It came to the knowledge of the Attorney-General that claimant, with its lumbering operations, was proceeding easterly, and had gotten over the Bond line, and he telegraphed to one of the officers of claimant corporation as follows: "I am informed you are trespassing on State land in townships eight and forty-one. Stop operations. If any exceptions inform me at once."

Negotiations were at once entered into between claimant and the Attorney-General, and the lumbering operations ceased east of the Bond line, and such cessation continued from June 27, 1905, to September twenty-second of that year. At that time operations were resumed by claimant on the territory between the Bond and "Koetteritz" lines, and continued until September twenty-ninth, when an action was begun in the Supreme Court by the Attorney-General, in which the People of the State of New York were named as plaintiff and Herkimer Lumber Company and others were named as defendants, in which injunctive relief, with other relief, was asked.

In that action the Attorney-General obtained a temporary injunction restraining claimant from continuing its lumber operations on the disputed territory, and in obedience to that injunction it ceased such operations for the time being. The injunction was dissolved on the 31st day of October, 1905.

The Supreme Court action brought by the Attorney-General and in which the temporary injunction was obtained, was subsequently tried with the result that the complaint was dismissed on the merits, and the judgment was subsequently affirmed in the Appellate Division. (*People* v. *Herkimer Lumber Co.*, 134 App. Div. 987.)

Claimant urges that it suffered damages because of the telegram from the Attorney-General and the injunction which he obtained, they having interfered with claimant's prosecution of its lumbering operations. It was for such damages that the judgment here appealed from was obtained in the Court of Claims, the judgment being rendered under plaintiff's claim and amended claim, as filed.

Claimant urges that it was entitled to recover these damages from the State on the theory that in obtaining the injunction

and sending the telegram the Attorney-General acted without probable cause, and that he acted willfully and wrongfully, and the Court of Claims evidently sustained that contention.

The defendant denies all liability.

At common law there would be no liability on the part of the State in a claim of this character. (*City of Yonkers* v. *Federal Sugar Refining Co.*, 221 N. Y. 206.) The State not being liable at common law can only be held responsible by express provisions of the statute. (*Litchfield* v. *Bond*, 186 N. Y. 66; *Smith* v. *State of New York*, 227 id. 405; *Locke* v. *State of New York*, 140 id. 480; *Konner* v. *State of New York*, 227 id. 478.)

I am clearly of the opinion that the State is not liable for any damages resulting from claimant's stopping work following the receipt of the telegram from the Attorney-General above quoted.

If claimant wanted to stop work simply because the Attorney-General had requested it to do so, that was its business. It was not obliged to comply with this entirely personal request, and if damages followed its voluntary action in acceding to the request of the Attorney-General, the State cannot be held liable. Neither the telegram nor any subsequent negotiations between claimant and the Attorney-General would be a contract enforcible against the State.

The serious question here is whether or not the State can be made liable for any damages that resulted to claimant because of the obtaining by the Attorney-General of the injunction which was in force in the action brought by him against claimant, from September 29, 1905, to October thirty-first of that year.

The only possible basis for liability is section 1990 of the Code of Civil Procedure, as amended by chapter 90 of the Laws of 1894, and so far as it is pertinent to this inquiry, it is as follows: " § 1990. Each provision of this act, requiring a party to give security, for the purpose of procuring * * * an injunction order, * * * or as a condition of obtaining any other relief, or taking any proceeding; or allowing the court, or a judge, to require such security to be given, is to be construed as excluding an action brought by the People of the State, or by a domestic municipal corporation; or by a public officer, in behalf of

the People, or of such a corporation; except where the security, to be given in such an action, is specially regulated by the provision in question; but in any action in which a domestic municipal corporation, or a public officer in behalf of such corporation, shall be, by the foregoing provisions of this section, excused from giving security on procuring * * * an order of injunction * * *, such corporation shall be liable for all damages that may be so sustained by the opposite party by reason of such * * * injunction in the same case and to the same extent *as sureties to an undertaking* would have been, if such an undertaking had been given."

By that section a municipal corporation and a public officer acting in behalf of the People, or of such a corporation, are excused from giving security when an injunction is obtained, but it is provided that such corporation shall be liable for all damages that may be sustained by the opposite party by reason of such injunction in the same case, and to the same extent, as sureties to an undertaking would have been liable if such an undertaking had been given.

The State is not a municipal corporation. (2 Bouvier Law Dict. [14th ed.] 201.) Consequently it is not affected by the provisions of section 1990 of the Code of Civil Procedure. If it had been the legislative intent to make the State as well as municipal corporations liable for damages resulting from the obtaining of an injunction under the circumstances as indicated in section 1990 of the Code, it would have plainly said so, and its failure to include the State in its provisions indicated a purpose to leave the State in precisely the same position it had occupied before that section was amended in 1894.

But it was held under that amendment that even a municipal corporation was exempt from liability. (*City of Yonkers* v. *Federal Sugar Refining Co.*, 221 N. Y. 206.)

In that case the city of Yonkers brought an action against the Federal Sugar Refining Company, and obtained an injunction restraining the company from maintaining a public nuisance. The injunction was granted August 29, 1907, and on September seventeenth it was vacated. The case was tried and a judgment obtained in favor of the plaintiff, which was subsequently reversed in the Appellate Division (136 App.

Div. 701), and the judgment of the latter court was affirmed in the Court of Appeals. (207 N. Y. 724.) Then the sugar refining company sought to collect damages from the city because of the obtaining of the temporary injunction that had been in force ten days, and was awarded substantial damages. The case finally reached the Court of Appeals where the claim was dismissed, the court holding that there was no liability.

In this case when the injunction was issued there was no undertaking given and none was required, and there is no basis for liability for plaintiff's damages under section 1990 of the Code.

Even if there had been an undertaking the liability would have been limited to the extent that sureties on an undertaking would have been liable.

There being none there was no basis whatever for liability against the State even if the Attorney-General in sending the telegram and obtaining the injunction acted without authority.

There is no evidence to justify the finding that he acted maliciously or willfully, and if he acted erroneously it would not be binding on the State so as to make it liable for resultant damages. (*Konner v. State of New York*, 227 N. Y. 478.)

As I view it the State is not legally responsible for any part of claimant's damages, not even for those that accrued when the temporary injunction was in force.

Section 264 of the Code of Civil Procedure confers jurisdiction on the Court of Claims to hear and determine private claims against the State, but it did not thereby foreclose the State from contesting its liability.

There certainly could not be any liability for the damages that resulted from claimant's stopping work in obedience to the Attorney-General's telegram; that was simply a personal request, cheerfully complied with by claimant as a matter of courtesy to the Attorney-General, and to enable him to examine the situation to see whether or not he was right in his contention that the Bond line was the true one, and any damages plaintiff may have suffered during the pendency of the injunction would not be a legal charge against the State because no undertaking was given when the injunction was obtained, and there is no basis for liability in its absence.

If in good conscience claimant ought to be compensated

for damages it suffered when the injunction was in force, and which damages were not the result of its own voluntary inactivity, undoubtedly it could be afforded relief by way of the Legislature, but the State was immune from such a claim at common law, and it certainly could not be made liable under the provisions of section 1990 of the Code of Civil Procedure. The State's immunity survived the terms of said section, as amended by chapter 90 of the Laws of 1894.

Undoubtedly claimant suffered damages, but I cannot see where the State is legally liable. If claimant has a moral claim the Legislature could recognize it, and act upon it.

But there having been no undertaking given at the time the injunction was obtained, there was nothing from which any liability could be measured, for in any event it could not have exceeded the liability of sureties on an undertaking if one had been given, and none having been given there is no basis for liability against the State, it being immune at common law, and that immunity not being affected by section 1990 of the Code of Civil Procedure.

The judgment should be reversed and the claim dismissed, with costs.

All concur.

Judgment and orders reversed and claim dismissed, with costs.