STATE BOARD OF MEDICAL EXAMINERS OF NEW JERSEY, PLAINTIFF-PROSECUTOR, v. MAX PLAGER, DEFEND-ANT-RESPONDENT.

Submitted May 4, 1937—Decided July 20, 1937.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *David T. Wilentz,* attorney-general, and *John F. Bruther,* assistant attorney-general.

For the respondent, *A. Lawrence Plager.*

The opinion of the court was delivered by

PERSKIE, J. The question requiring decision in this cause is whether defendant, not a licensed physician, by taking blood pressure, diagnosed a physical condition in violation of section 8 of chapter 271, *Pamph. L.* 1915.

This section, so far as is applicable here, provides as follows:

"Any person shall be regarded as practicing medicine and surgery within the meaning of this act, who * * * holds himself or herself out as being able to diagnose * * * any human disease, pain, injury, deformity or *physical condition,*

or who shall either offer or undertake *by any mean or methods* to diagnose * * * any human disease, pain, injury, deformity or physical condition * * *." (Italics supplied.)

Defendant leased premises on the boardwalk in Atlantic City, New Jersey, wherein he installed a sphygmomanometer (a blood pressure machine), which he represented would disclose the blood pressure of any person upon whom it was used. At a charge of ten cents, any passerby who so desired, could enter the premises, seat himself upon a chair in full view of those who chanced to be present and submit to the taking of his blood pressure. In the sense only that defendant used a sphygmomanometer, bandaged the arm, applied the stethoscope, he appeared to go through the same process as would a licensed physician in taking blood pressure. He announced the registered result, and that result could then be compared with the normal pressure as shown by a chart prominently displayed on the premises. It is clear that, other than an occasional statement that the pressure disclosed was high or low, defendant made no comment as to the effect of, or treatment for, the blood pressure as indicated and announced by him. Does such conduct constitute a diagnosis of a disease or of a physical condition—by any means or methods—within the intendment of the act in question? The learned trial judge of the Court of Common Pleas of Atlantic county, who presided without a jury, found that it did not. He adjudged defendant not guilty. A judgment was entered upon that verdict. We granted *certiorari*.

*First:* It is a well settled principle in construing legislation that common words are to be taken in their ordinary significance. *Evening Journal Association* v. *State Board of Assessors,* 47 *N. J. L.* 36; *Hackensack Trust Co.* v. *Hackensack,* 116 *Id.* 343; 184 *Atl. Rep.* 408. Thus for example, we "analyze" a problem, we "construe" limitations, we "interpret" words, we "expound" theories, we "diagnose" a disease, or the good or ill health of a person. Obviously, it first becomes necessary to determine whether abnormal blood pressure is in itself a disease. If it is, then, of course, the taking of one's blood pressure and the announcement that it is high

or low, normal or abnormal, is diagnosing a disease or physical condition prohibited under the act. But, if blood pressure is not a disease in itself but is only one of the many factors in aid of making a proper diagnosis of a disease or of a physical condition then it is by like reason and logic not the making of a diagnosis of a disease or of a physical condition prohibited under the act. Which is it?

Dr. Clarence L. Andrews in his work on "What Is Blood Pressure?" (1931), says in his preface: "If, by pointing out * * * that blood pressure, itself, is not a disease this volume helps to bring about * * * a clearer and better understanding of blood pressure and its relation to health, its mission will be fulfilled." (Page viii.) Again he said (at page 223), Summary and Conclusions: "Blood pressure, always remember is not a disease, but is the physical expression of circulatory system and what has taken place in your body. *It is the smoke and not the fire.*" (Italics supplied.)

Dr. Theodore C. Janeway, in his work on the Clinical Study of Blood Pressure (1904), says (at page vii): "In medicine, accuracy of observation is the first step towards a correct diagnosis, without which nothing but bald empiricism is possible." Again he says (at page vii): "The value of a knowledge of the actual blood pressure in a particular case must depend largely on the observer's acquaintance with the physiological and pathological causes for variations."

Dr. Francis A. Faught in his work on Blood Pressure from the Chemical Standpoint (1913), says (at page 13):

"To properly appreciate the function of the sphygmomanometer and the changing conditions of the circulation which it reveals, it is important to have a working knowledge of the theory of hydrostatics and of the physical condition surrounding the circulation both in health and disease, and to possess a proper appreciation of the factors controlling the cardiovascular and renal systems and the significance of the terms employed in this study, * * *."

From what has been written, it follows that abnormal blood pressure, generally speaking, is not a disease in itself; that the taking of blood pressure is, at most, but another modern

method of ascertaining a fact in aid of making a proper diagnosis. Thus, it is almost invariably employed by careful physicians as one of the many steps in the process of making a scientific diagnosis. The announcement by defendant of the result of the systolic blood pressure—the diastolic blood pressure was not taken—was the mere statement of a fact; and it was not a diagnosis of a disease or of a physical condition. True that the ascertainment of the fact in the case at bar—crude and unscientific as it necessarily was—required more skill and ability than is required in the taking of temperature or in the weighing of a person, but, nonetheless, there is, as pointed out by the trial judge, no difference in principle. In each instance—notwithstanding the ultimate use made of the fact however obtained—it may or may not be one of the factors upon which an actual diagnosis is made.

If sound public policy demands that defendant's conduct be prohibited; that physicians and surgeons only be permitted to take blood pressure, and that the taking of blood pressure should be decreed as the making of a diagnosis of a disease or physical condition, the legislative and not the judicial branch of the government must so provide. But until it does so decree we cannot read such provisions, desirable as they may be, into the act.

*Second:* Did the court err in refusing to be bound by the expert testimony of the doctor who was a witness for the state and who did testify that "the taking of blood pressure (*i. e.,* a reading of the blood pressure machine) is the diagnosing of a physical condition" and therefore contrary to the provisions of the act? We think not. It is true that there was no medical testimony offered by the defendant but it is also true that the cross-examination of the witness, his answers or explanations to questions propounded to him by the court left the latter unsatisfied, unconvinced. The trial judge, sitting without a jury, was no more conclusively bound by this testimony than a jury would have been. The proofs here exhibited are entirely unlike those which are disclosed in the case of *State Board of Medical Examiners* v. *Baker,* 10 *N. J. Mis. R.* 663; 160 *Atl. Rep.* 339, where the trial

438

judge disregarded the "uncontradicted testimony of the factual witnesses and the admitted expert testimony that [defendant] had practiced chiropody," and in lieu thereof substituted his own opinion unsupported by the evidence. That is clearly not the situation in the case at bar. Here the trial judge did not disregard any of the testimony of the factual witness; he did not disregard the testimony of the doctor and substitute his own opinion on unsupported evidence. For the reasons already stated, and in the light of all the testimony and proper deducible inferences to be drawn therefrom, he merely did not give the doctor's testimony that probative weight which is claimed for it. That, as a trier of the fact and of the law applicable thereto, was his prerogative.

Judgment is affirmed, but without costs.