RALPH N. VOORHIS and FREDERICK S. DUNCAN, as Trustees under the Last Will and Testament of JEREMIAH W. DIMICK, Deceased, Plaintiffs, *v.* CORNELL CONTRACTING CORPORATION and THE PORT OF NEW YORK AUTHORITY, Defendants.

City Court of New York, New York County, December 9, 1938.

*Frederick H. Koschwitz*, for the plaintiffs.

*Julius Henry Cohen* [*Mortimer S. Edelstein* of counsel], for the defendant, The Port of New York Authority.

Coleman, J. The Port of New York Authority, one of the defendants in this action, has appeared specially to ask for a dismissal of the complaint as to it on the ground that as an agency of the two States of New York and New Jersey, it is immune from suit in this court. The action was brought by the plaintiffs against the Port Authority and the Cornell Contracting Corporation to recover for damage to plaintiffs' real property caused by blasting, in the course of work upon the approach to the Lincoln Tunnel, which was being constructed for the Port Authority by the contracting company. The specific grounds of the objection of the Port Authority are that it was created by treaty between New York and New Jersey; that it thereby was clothed with the sovereign immunity of each State; that in the treaty sovereign immunity from suit was not waived, nor was the Port Authority authorized to waive such immunity, and finally, that in any event it is not liable for torts arising out of the performance of governmental functions.

The history of the creation of the Port Authority, with a statement of the several legislative enactments, and of the powers conferred by these enactments and by the compact of 1921 between New York and New Jersey will be found in *Helvering* v. *Gerhardt* (304 U. S. 405), where the question of the immunity from Federal income taxation of the salaries of employees of the Authority was involved.

I incorporate here excerpts from the statement of the facts in that opinion.

" The Port Authority is a bi-state corporation, created by compact between New York and New Jersey (approved by Congress, Joint Resolution of August 23, 1921, 42 Stat. 174). The compact directed the Authority to recommend a comprehensive plan for improving the port (of New York) and facilitating its use, by the construction and operation of bridges, tunnels, terminals and other facilities.

" Pursuant to further legislation of the two States * * * the Authority has constructed * * * the Holland Tunnel and the Lincoln Tunnel, interstate vehicular tunnels passing under the Hudson river [as well as interstate bridges]. These enterprises were financed in large part by funds advanced by the two States and by the Port Authority's issue and sale of its bonds. * * *

" The Port Authority collects tolls for the use of the bridges and tunnels, and derives income from the operation of the bus

line and terminal building, but it has no stock and no stockholders, and is owned by no private persons or corporations. Its projects are all said to be operated in behalf of the two States and in the interests of the public, and none of its profits inure to the benefit of private persons. Its property and the bonds and other securities issued by it are exempt by statute from State taxation. * * * Statutes of New York and New Jersey relating to the various projects of the Port Authority declare that they are in all respects for the benefit of the people of the two States, for the increase of their commerce and prosperity, and for the improvements of their health and living conditions, and the Port Authority shall be regarded as performing a governmental function in undertaking the said construction, maintenance and operation and in carrying out the provisions of law relating to the said [bridges and tunnels] and shall be required to pay no taxes or assessments upon any of the property acquired by it for the construction, operation and maintenance of such bridges and tunnels."

The Port Authority consists of six Commissioners of each State appointed — in New York, by the Governor by and with the advice and consent of the Senate, and in New Jersey, by the Legislature in the first instance, and, as vacancies occur, by the Governor.

The construction and maintenance of highways, bridges and tunnels is one of the primary governmental functions of the States. (*Atkin* v. *Kansas*, 191 U. S. 207, 221, 222; *County Commissioners* v. *Chandler*, 96 id. 205. Cf. *Sherman* v. *United States*, 282 id. 25, 29, " California has not gone into business generally as a common carrier, but simply has constructed the Belt Line as an incident of its control of the harbor — a State prerogative.") If the construction of the Lincoln Tunnel had been intrusted to one of the conventional administrative departments of the State of New York, the Department of Public Works, for example, there is no doubt that the State itself would be regarded as the operative agency, and that the question of immunity would be determined on that ground. (*Sherman* v. *United States*, 282 U. S. 25: *Highway Commission of Wyoming* v. *Utah Construction Co.*, 278 id. 194; *People ex rel. Bridge Authority* v. *Davis*, 277 N. Y. 292, 299; *Smith* v. *State*, 227 id. 405; *Kansas City Bridge Co.* v. *Alabama State Bridge Corp.*, 59 F. [2d] 48.) Furthermore, " the State may create an agency for the purpose of carrying out a State duty or function " (*Gaynor* v. *Marohn*, 268 N. Y. 417), and confer upon it certain immunities. (*People ex rel. Bridge Authority* v. *Davis*, 277 N. Y. 292; *Houck* v. *Little River District*, 239 U. S. 254.) Upon this hypothesis the question of the immunity from suit of the Port Authority would depend upon the power of the Legislature to confer such immunity and the construction of the language used in creating it.

But the plaintiffs urge two other objections: *First*, that the Port Authority is not an agency of the State in the sense that the Department of Public Works is; that at best it is a private corporation acting for the State in the State's proprietary capacity; and *second*, that it is a municipal corporation. In neither event, plaintiffs contend, does the rule as to the immunity of the sovereign apply.

It seems to me unnecessary to enter into a discussion of the two questions so elaborately presented by both sides, although the decisions of courts in New Jersey and-in New York go far toward invalidating the plaintiffs' contentions. (Cf. *Stephens* v. *Commissioners of Palisades Interstate Park*, 93 N. J. L. 500; 108 A. 645; *Kirkman* v. *Commissioners of Palisades Interstate Park*, 200 App. Div. 870; *Ramapo Mountains Water Power & Service Co.* v. *Commissioners of Palisades Interstate Park*, 177 id. 700; *The Onteora*, 298 Fed. 553.) As I have already said, it could not be disputed that the State could perform the function of the Port Authority itself, directly. It is equally clear that if it had done so the mantle of immunity would cover it, for in the case of a State instrumentality, as distinguished from that of a public subdivision of a State, the question whether the particular functions exercised are governmental or proprietary is an irrelevant one. For when the question of the immunity of a State, considered as a sovereign, arises, the nature of the particular activity cannot be inquired into (*Matter of State of New York, No. 1*, 256 U. S. 490; *Matter of State of New York, No. 2*, Id. 503; *Murray* v. *Wilson Distilling Co.*, 213 id. 151; *The Onteora, supra*. Cf. HOLMES, J., in *Sherman* v. *United States*, 282 U. S. 25, 29) any more than in the broader field of international law where the question whether a foreign State is acting in a governmental or proprietary capacity is not open to examination in our courts. (*Berizzi Bros. Co.* v. *S. S. Pesaro*, 271 U. S. 562.)

But whatever immunity exists and on whatever grounds, it would necessarily extend in New Jersey to the Port Authority considered as an agency of that State. (Cf. *Stephens* v. *Commissioners of Palisades Interstate Park, supra.*) For the Port Authority is no less an agency of New Jersey than it is an agency of New York. It is this fact which makes unnecessary a full discussion of the two separate contentions of the defendant, and which disposes of the argument that an entity organized as a corporation cannot be immune from legal process in the State or States of its creation. For if, had the undertaking been carried on by one State or the other, either directly, or through a conventional State agency, the State would have been immune — as we have seen it would be — the result must be the same where both States jointly undertake the work by means of a distinct entity acting in behalf of two

sovereign States. " Plainly, the situation [the development of the port] could not be adequately dealt with except through the co-ordinated efforts of New York, New Jersey and the United States." (Frankfurter & Landis, The Compact Clause of the Constitution — A Study in Interstate Adjustments, 34 Yale L. J. 685, 697.) Of necessity, a body external to the two sovereign States had to be created — in no other way could the two act in concert — and it is unimportant whether it is denominated a corporation or an authority or a commission. (Cf. *People ex rel. Bridge Authority* v. *Davis*, 277 N. Y. 292, 298, 299.) As the immediate agent of two sovereigns, the Port Authority must share the attribute of immunity from suit which is inherent in a sovereignty.

Indeed, it is hard to see how there could be a clearer instance of an agency sharing the immunity of its creators. The alternative is that when two sovereign States act under a solemn compact approved by Congress in a matter " for the benefit of the people of the two States " and in which they must act by compact, they lose their sovereignty. " The compact * * * adapts to our Union of sovereign States, the age-old treaty making power of independent sovereign nations." (*Hinderlider* v. *La Plata Co.,* 304 U. S. 92, 104. See Frankfurter & Landis, The Compact Clause of the Constitution — A Study in Interstate Adjustments, 34 Yale L. J. 685, 696–698, *supra.*) So far as New Jersey is concerned, the acceptance of this alternative results in its being subjected to suit in the courts of this State, in the face of the basic principle that it " cannot be sued in its own courts, or in any other, without its consent and permission." (*Beer* v. *Arkansas*, 60 U. S. [20 How.] 527, 529; *Kawanakoa* v. *Polyblank*, 205 id. 349, 353.) There is nothing in the statutes which in terms constitutes a waiver, and in view of the basic immunity of a sovereign and the necessity of creating a commission no waiver should be implied.

In the case of a joint undertaking of sovereignties by treaty, recent arguments against the extension of immunity to the rapidly increasing number of " governmental corporations " cannot apply. (Cf. Thornton, Government Proprietary Corporations, 35, 43–62.)

The discussion might well end here but for the *Gerhardt* decision, which the plaintiffs say establishes the point that the Port Authority is not an agency of the State. But that case, and similar cases (Cf. *United States* v. *California*, 297 U. S. 175; *Ohio* v. *Helvering*, 292 id. 360; *South Carolina* v. *United States*, 199 id. 437) relate to the position of a State within the framework of the Federal system and have no application here. The question in the *Gerhardt* case was not whether the activities of the States of New York and New Jersey, through their Port Authority, were

of a governmental or proprietary nature. The only question was whether in the entirely different sphere of Federal taxation, the salaries of employees of the Authority were exempt from the Federal income tax. The question was answered not on the ground that an income tax on the employees " does not curtail any of those functions [of the States] which have been thought hitherto to be essential to their continued existence as States." (*Helvering* v. *Gerhardt*, 304 U. S. 405, 420.) There may be in the opinion the germ of further delimitation of the scope of exemption from Federal taxation of the salaries of State employees, but the answer to that problem will not turn upon and will not determine the question whether the particular activity is governmental or not. From the point of view of the State, it is for the State itself, within constitutional limits, to decide what functions to undertake.

*United States* v. *California* (297 U. S. 175) makes the distinction clear. The government attempted to recover from the State of California penalties for violation of the Safety Appliance Act in the operation of the belt line railroad which the State owned and operated in the port of San Francisco. In an earlier case (*Sherman* v. *United States*, 282 U. S. 25) where the suit had been brought against the individual members of the " Board of State Harbor Commissioners " of the State, which operated the railroad, the court had held that if there was any liability at all, it was upon the State; " the carrier here is the State." In the later case it was urged by the State that in operating the railroad it was acting in a governmental capacity, and so was immune from liability: and by the government that California was acting in its proprietary capacity. The court said that the issue thus raised was not determinative of the question involved. It was held that California was undoubtedly acting within its powers as a State, but that the operation of the railroad was subject to the paramount power of the government to regulate the operation of railroads. The matter was put succinctly in *Allen* v. *Regents* (304 U. S. 439) where the court said that " when a State embarks in a business which would normally be taxable, the fact that in so doing it is exercising a governmental power does not render the activity immune from Federal taxation."
' The motion is granted and the complaint is dismissed as to the Port Authority. The action will be severed so as to be continued against the other defendant.