## HOWELL v. PORT OF NEW YORK AUTHORITY.

### Civ. No. 435.

District Court, D. New Jersey.

Aug. 28, 1940.

Benjamin M. Cohen, of Camden, N. J., for complainant.

Russell E. Watson, of New Brunswick, N. J., for defendant, appearing specially.

Julius Henry Cohen, Leander I. Shelley, and Mortimer S. Edelstein, all of New York City, for defendant.

WALKER, District Judge.

1. The complaint filed herein alleges: The Port of New York Authority (hereinafter referred to as "The Authority") deposited funds with the Ocean City National Bank (hereinafter referred to as "Bank") at various times, and the Bank secured said deposits with certain negotiable securities, a part of which were sold after the bank suspended business and from the proceeds thereof The Authority was paid the full amount to its credit at the time business was suspended and the difference was remitted to the Bank, together with the unsold securities.

2. The Bank, by its receiver, contends that securing the deposits was illegal, void and ultra vires and the payment to The Authority should be held in trust for it.

3. The Authority moves to dismiss said complaint on the grounds that:

(a) The Port of New York Authority was created by a Compact between the sovereign states of New Jersey and New York, who are the real parties in interest.

(b) The Compact clothed The Authority with the sovereign immunities of each state.

(c) Immunity from suit was not expressly or impliedly waived.

(d) The 11th Amendment to the Federal Constitution forbids a suit or action against any one of the United States by citizens of another state.

4. The Bank, answering the motion, admits for the purposes herein, that: The statute by which The Authority was established, does not expressly authorize it to sue or be sued, that such authority cannot be implied from the terms of the Acts, and that an entity organized as an arm of a state government to perform governmental functions, is not subject to suit and thereby the question is narrowed to: Is the Port of New York Authority a sovereign agency of the states of New York and New Jersey, immune from suit in the absence of express consent?

5. It seems advisable to briefly review the history of the agreement or Compact between states and the conditions which gave rise to The Authority.

(X) 6. In many instances the colonies, over a period of years preceding the Revolution, settled their boundary disputes through joint commissions, the agreements arrived at, required the approval of the Crown, and in the event of disagreement, an appeal to the Crown was usually followed by reference to a Royal Commission, with appeal therefrom to the Privy Council.

7. The framers of our Constitution were familiar with the foregoing modes of settlement and the Philadelphia Convention wrote both methods into the Constitution.

8. The applicable provisions of Section 10 of Article I are:

"No State shall enter into any Treaty, Alliance, or Confederation * * *.

"No State shall, without the Consent of Congress, * * * enter into any Agreement or Compact with another State * * *."

9. The consent of Congress as a prerequisite to the validity of agreements or compacts between and among the states appears as the republican transformation of the needed approval by the Crown. A mechanism or legal control was thereby created over affairs projecting beyond state lines, and yet not calling for or being capable of national treatment. (X) *

10. The problem of developing the Port of New York is the direct result of its geography, its tremendous concentration of population and commerce, its division into two states and over two hundred separate municipalities. In the words of Mr. Justice Frankfurter and Dean Landis, it is an organic whole, split between the law-making of two states.

11. The New York and New Jersey Compact of 1834, P.L. p. 118, settled boundary and territorial jurisdiction but not the reorganization and coordination of Port facilities, which have an important bearing upon the Commerce of the whole nation and require joint state action. New York Harbor Case, 47 I.C.C. 643.

---

* Mr. Justice Frankfurter and Dean Landis in "The Compact Clause of the Constitution—A Study in Interstate Adjustments", 34 Yale Law Journal, 685, state the history and objectives of the Compact Clause concisely but exhaustively; (x) to (x) inclusive is taken therefrom.

12. This problem of interstate relationship was given considerable thought, but the first definite step was not taken until 1917, when Commissioners were appointed.[1] They presented their report in 1920,[2] and as a result thereof, each state in 1921 designated representatives to enter into a Compact.[3] The Consent of Congress to the said Agreement was given on August 23, 1921.[4]

13. We proceed to an examination of the Compact and the subsequent pertinent legislation, in an endeavor to ascertain whether or not the legislatures of the respective states intended to create an agency to perform governmental functions and to endow it with the attributes of sovereignty.

## Compact

The Fifth recital states the purposes can best be accomplished by and through a joint or common agency;

Article III creates: "The Port of New York Authority", a body corporate and politic;

Articles IV and V set up a board of twelve commissioners, six for New York, six for New Jersey;

Article VI gives power to operate terminal or transportation facilities within the district and to make charges for the use thereof;

Article VII. A detailed annual report must be made to the legislature of both states. The Authority shall not pledge the credit of either state except by and with the authority of the legislature thereof;

Article XV obligates each state to pay not more than $100,000, in any one year to The Authority for the salaries, office and other administration expenses unless and until the revenues are adequate to meet all expenditures.

Article XVI requires three members from each state to be present at all meetings and a majority present from each state, but in any event, three from each state must vote in favor of the action taken. The states reserving the right to provide by law for the exercise of a veto power by the governor thereof, over any action of any commissioner appointed therefrom. (Laws for the exercise of a veto power have been passed by each state.)[5]

## Subsequent Legislation

In 1922,[6] the Comprehensive Plan for the development of The Port, pursuant to said Compact, was adopted and it provides for terminals, highways, approaches, bridges, tunnels, belt lines, marginal railroads and warehouses.

Part of § 8 of said Comprehensive Plan, Laws N.Y.1922, c. 43, § 8, and N.J.S.A. 32: 1–33, reads: "* * * The port authority shall be regarded as the municipal corporate instrumentality of the two states for the purpose of developing the port and effectuating the pledge of the states in the said compact, but it shall have no power to pledge the credit of either state or to impose any obligation upon either state, or upon any municipality, except as and when such power is expressly granted by statute, or the consent by any such municipality is given."

Specific legislation has been enacted authorizing The Authority to acquire title to real estate by condemnation or the exercise of the right of eminent domain.

Surplus revenues are to be used according to the directions of the two states.[7]

To the end that the counties, cities, boroughs, villages, towns, townships and other municipalities in the Port of New York District may not suffer undue loss of taxes and assessments by the acquisition and ownership of property therein by The Authority, it is authorized to undertake to pay a fair and reasonable sum or sums annually, in connection with any marine or inland terminal property owned by it.[8]

---

[1] Chap. 426, Laws of N. Y. 1917—Chap. 130, Laws of N.J. 1917.

[2] New York, New Jersey Port and Harbor Development Commission. Joint Report with Comprehensive Plan and Recommendations. 1920.

[3] Chap. 154, Laws of N.Y.1921, amended Laws 1930, c. 419—Chap. 151, Laws of N.J.1921, R.S.N.J.1937, 32:1–1 et seq., N.J.S.A. 32:1–1 et seq.

[4] Public Resolution No. 17—67th Congress (S.J.Res. 88), Chap. 77, 42 Stat. 174.

[5] Chap. 700, Laws of N.Y.1927—Chap. 333, Laws of N.J.1927, N.J.S.A. 32:2-6 to 32:2–9.

[6] Chap. 43, Laws of N.Y.1922—Chap. 9, Laws of N.J.1922, N.J.S.A. 32:1–26 to 32:1–35.

[7] Chap. 48, Laws of N.Y.1931—Chap. 5, Laws of N.J.1931, N.J.S.A. 32:1–141 to 32:1–143.

[8] Chap. 553, § 1, Laws of N.Y.1931—Chap. 69, Laws of N.J.1931, N.J.S.A. 32:1–144.

14. The plaintiff points to that part of the Comprehensive Plan identified hereinbefore as part of § 8, and says the designation of The Authority as a municipal corporate instrumentality is its answer to any contention that an agency to perform governmental functions and endowed with the attributes of sovereignity was intended.

15. It is true, the Courts of New York have held the State of New York is not a municipal corporation. Armstrong et al. v. State Bank of Mayville et al., 177 App.Div. 265, 165 N.Y.S. 5, affirmed, Armstrong v. Witt, 227 N.Y. 563, 124 N.E. 896; Herkimer Lumber Co. v. State, 196 App. Div. 708, 189 N.Y.S. 119; Osterhoudt v. Stade, 133 App.Div. 83, 117 N.Y.S. 809. It is also true a legislature is presumed to be familiar with the Common Law and Statutes of its own state, (Ross v. Miller, 115 N.J.L. 61, 178 A. 771), and common words are to be taken in their ordinary significance. Evening Journal Ass'n v. State Board of Assessors, 47 N.J.L. 36, 54 Am.Rep. 114; Storage Co. v. Assessors, 56 N.J.L. 389, 29 A. 160; Hackensack Trust Co. v. City of Hackensack, 116 N.J.L. 343, 184 A. 408; State Board of Examiners v. Plager, 118 N.J.L. 434, 193 A. 698. But, when the defendant relying thereon says, ergo, The Authority is a municipal corporation and not a state agency, performing governmental functions and having the attributes of sovereignity, we must call its attention to the provisions of the Compact and the legislation passed subsequent to the adoption thereof, parts of which are hereinbefore specifically set forth. These detailed restrictions and limitations upon the action of The Port Authority Commissioners make it clear that The Authority is not an autonomous unit of government endowed with powers of self-government.

16. The ordinary significance of the term municipal corporation is a city, town or village which is an incorporation of its inhabitants, governed by elected bodies having local self-government, with power to tax and without the obligation to report its activities directly to the executive branch of government.

17. The Authority is not an incorporation of its inhabitants, but a Board of Commissioners appointed by officials elected by the states at large. The persons who inhabit The Port District have no direct right of vote with respect to the activities of The Authority.

18. The complainant, in referring to the Comprehensive Plan, also points out that belt lines, marginal railroads, terminals and warehouses are not governmental functions and if it intends thereby to support its argument that The Authority is a municipal corporation and not a state agency, the absurdity of this position is its best answer.

19. The construction, maintenance and operation of highways, bridges and tunnels is one of the primary governmental functions of the states. Atkin v. Kansas, 191 U.S. 207, 221, 24 S.Ct. 124, 48 L.Ed. 148; Dodge County Com'rs v. Chandler, 96 U.S. 205, 24 L.Ed. 625; Sherman v. United States, 282 U.S. 25, 29, 51 S.Ct. 41, 75 L.Ed. 143. A state may create an agency for the purpose of carrying out a state duty or function. Curtis & Hill Gravel & Sand Co. v. State Highway Comm., 91 N.J.Eq. 421, 111 A. 16; State Highway Comm. v. City of Elizabeth, 102 N.J.Eq. 221, 227, 140 A. 335, affirmed, 103 N.J.Eq. 376, 143 A. 916; New Jersey Interstate Bridge & Tunnel Comm. v. Jersey City, 93 N.J.Eq. 550, 118 A. 264; Miller et al. v. Port Authority et al., New Jersey Supreme Court, Hudson County, 15 A.2d 262, decided November, 1939.

20. The legislatures, in drafting § 8 of the Comprehensive Plan did not use the common and familiar term municipal corporation but the uncommon municipal corporate instrumentality, yet in the same context or framework, they used the word municipality to designate cities, towns and villages, and it seems unlikely, they would ignore the common and known term municipal corporation and select an uncommon term if they wished to establish a municipal corporation, as the Bank contends. Further therein, pledging the credit of either state is prohibited. This would be totally unnecessary if the complainant's interpretation of municipal corporate instrumentality is accepted, and courts will not interpret a statute in such a manner as to regard parts thereof as surplusage unless no other construction is reasonably possible. West v. Lysle, 302 Pa. 147, 153 A. 131.

21. The New Jersey Supreme Court has said: "It is an established rule in the exposition of statutes that the intention of the Legislature is to be derived from a view of the whole and of every part of the statute, taken and compared together. The real intention, when ascertained, will prevail over the literal sense of terms. * *"

Lynch v. City of Long Branch et al., 111 N. J.L. 148, 167 A. 664 at 666.

22. The Port Authority is wholly different from a city, town, village or other civil subdivision of government subject to suit. It is more like the New Jersey State Highway Commission, The Palisades Interstate Park Commission, The New Jersey Board of Tenement House Supervisors and many other state agencies, all of which have been held immune from suit without their consent. Haycock v. Jannarone, 99 N.J.L. 183, 122 A. 805; Stephens v. Commissioners of Palisades Interstate Park, 93 N.J.L. 500, 108 A. 645; Board of Tenement House Supervision v. Schlechter, 83 N.J.L. 88, 83 A. 783; Lodor v. Baker, Arnold & Co., 39 N.J.L. 49; Curtis & Hill, etc. Co. v. State Highway Commission, supra; Nesbitt v. Board of Managers of New Jersey Agricultural Experiment Station, 157 A. 551, 10 N.J.Misc. 19; DeSantis et ux. v. Delaware, L. & W. R. Co. et al., 165 A. 119, 11 N.J.Misc. 22; American Dock, etc., Co. v. Trustees of Public Schools, 35 N.J. Eq. 181; State Highway Commission v. City of Elizabeth, supra; In re Law, 186 A. 528, 14 N.J.Misc. 593; Strobel Steel Construction Co. v. State Highway Commission, 120 N.J.L. 298, 198 A. 774; Miller et al. v. Port Authority et al., supra.

■ 23. The complainant stresses at length the case of Callanan Road Improvement Co. v. Arthur McMullen Co., 253 App. Div. 424, 2 N.Y.S.2d 666; Id., 254 App. Div. 796, 4 N.Y.S.2d 1021; Id., 280 N.Y. 536, 20 N.E.2d 7, but this case is distinguishable. 9 It deals only with the interpretation of the General Corporation Law of New York State, Consol.Laws, c. 23, and its relation to a strictly local agency created solely by said state. The Albany Port District Commission therein passed upon, has many powers of local government which The Authority does not have. Essential characteristics of a municipal corporation are powers of local government. State, Lydecker, Prosecutor v. Township of Englewood, 41 N.J.L. 154, 12 Vroom 154; Allison v. Corker, Assessor, 67 N.J.L. 596, 52 A. 362, 60 L.R.A. 564; Van Cleve v. Passaic Valley Sewerage Comm., 71 N.J. L. 183, 58 A. 571, reversed on other grounds, 71 N.J.L. 574, 60 A. 214, 108 Am. St.Rep. 754.

■ 24. The Port Authority, a bi-state corporation (Helvering etc. v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427), is a joint or common agency of the states of New York and New Jersey. It performs governmental functions which project beyond state lines, and it is immune from suit without its consent. Voorhis et al. v. Cornell Contracting Corp. and Port of New York Authority et al., 170 Misc. 908, 10 N.Y.S.2d 378; LeBeau Piping Corporation v. City of New York and Port of New York Authority et al., 170 Misc. 644, 9 N. Y.S.2d 853; Pink, etc., v. Port of New York Authority et al.,[10] Supreme Court, New York County, February 3, 1938; Miller et al. v. Port of New York Authority et al., supra.

The motion to strike the complaint is granted.

An order in accordance herewith should be presented.

---

9 Note: Commissioner of Internal Revenue v. Ten Eyck, 2 Cir., 76 F.2d 515; Helvering, etc., v. Gerhardt, 304 U. S. 405, 58 S.Ct. 969, 82 L.Ed. 1427.

10 No opinion for publication.