JOHN J. AND MARGARET C. REDDY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 469-74.     Filed May 24, 1976.

*Gene F. Reardon,* for the petitioners.
*Charles H. Cowley,* for the respondent.

FAY, *Judge:* Respondent determined a deficiency of $1,630 in petitioners' Federal income tax for 1970. We are to decide whether certain stock which became worthless during that year was issued in accordance with the requirements of section 1244[1] so as to entitle petitioners to ordinary loss treatment under that section.

### FINDINGS OF FACT

Certain facts were stipulated by the parties.

Petitioners John J. and Margaret C. Reddy are husband and wife who filed their joint Federal income tax return for the year in issue at Denver, Colo. They resided in Denver, Colo., at the time their petition was filed with this Court.

Prior to 1968, petitioners operated an authorized Chevrolet automobile dealership in Castle Rock, Colo. Early in 1968, they received from the General Motors Corp. a tentative offer to operate a new Oldsmobile franchise in North Kansas City, Mo. As a matter of course, General Motors requires that their potential franchisees demonstrate a credit standing sufficient to enable them to borrow a specified amount for adequate capitalization. In this instance, General Motors required that petitioner make a capital stock contribution of about $84,000.

To show General Motors that they had secured these funds, petitioners on June 10, 1968, deposited with the National Bank of North Kansas City two checks totaling $84,000. In view of the fact that no franchise for the proposed corporation had as yet been granted by General Motors, petitioners deposited these funds in a special account in their own name. These funds were later applied to the corporation's account, comprising the initial capital funding for the new corporation.

Petitioners were aware of the difficulties they might encounter in beginning an automobile dealership in a large, unfamiliar city. Since they were investing a large portion of their savings in the venture, they were concerned with insulating themselves as much as possible from an adverse outcome.

Consequently, in planning their proposed corporation, petitioners met frequently with their accountant who advised

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

them of the advantages of which they might avail themselves by issuing stock in accordance with the provisions of section 1244.

By the time the articles of incorporation were signed, petitioners understood the implications of section 1244 and fully desired and intended that the shares in their proposed corporation be issued under that provision. In fact, it was their intention to condition the issuance of the stock on the adoption of a plan that met the requirements of section 1244.

Petitioners authorized a Kansas City attorney to prepare the articles of incorporation for their proposed corporation. On June 10, 1968, petitioners signed the articles of incorporation of the Reddy Oldsmobile, Inc. (hereinafter Reddy Oldsmobile). Included in the articles were the names and addresses of the initial subscribers of shares and the number of shares subscribed for, as follows:

| John J. Reddy | 85,792 |
| Margaret C. Reddy | 2 |
| Charles B. Reddy | 2 |

Additionally, the articles state:

The number of shares to be issued before the corporation shall commence business is eighty-five thousand seven hundred ninety-six (85,796) shares of common stock, with a par value of One Dollar ($1.00) per share, or an aggregate of Eighty-Five Thousand Seven Hundred Ninety-Six Dollars ($85,796.00), which *said capital has been fully paid up in cash and is in the hands of the first Board of Directors hereinafter named.* [Emphasis supplied.]

Petitioners, however, neither read nor understood the articles before signing them. In fact, such capital had not been paid in, and the first board of directors was not named therein and had yet to come into existence.

Subsequent to June 10, 1968, petitioners were informed that they had been accepted as a franchisee by the General Motors Corp.

On June 17, 1968, the articles of incorporation of the Reddy Oldsmobile, Inc., were filed by the secretary of state of the State of Missouri, at which time a certificate of incorporation was issued.

The first board of directors of Reddy Oldsmobile was elected at a meeting of the shareholders held on June 21, 1968. On this date, the board met and adopted a written plan purporting to comply with the requirements of section 1244. The stock certificates were thereupon signed, dated, and delivered. Reddy

Oldsmobile commenced business and began selling cars to the public on July 11, 1968.

Petitioners' stock in Reddy Oldsmobile, which was acquired at a total cost of $85,794, became totally worthless during 1970. On their Federal income tax return for 1970, petitioners deducted $50,000 of their basis in that stock as an ordinary loss incurred on the sale or exchange of stock issued in accordance with the requirements of section 1244.

### OPINION

In issue is the character of the loss, whether capital or ordinary, sustained by petitioners when their stock became worthless during the year in issue. Specifically, we must ascertain whether the stock on which petitioners have claimed an ordinary loss met the requirements of section 1244.

Section 1244 provides that shareholders in a small business corporation can, if certain requirements are met, take an ordinary loss deduction on the worthlessness of their stock.[2] In

---

[2] SEC. 1244. LOSSES ON SMALL BUSINESS STOCK.

(a) GENERAL RULE.—In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset.
* * *
(c) SECTION 1244 STOCK DEFINED.—

(1) IN GENERAL.—For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if—

(A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan,

(B) at the time such plan was adopted, such corporation was a small business corporation,

(C) at the time such plan was adopted, no portion of a prior offering was outstanding,

(D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), and

(E) such corporation, during the period of its 5 most recent taxable years ending before the date the loss on such stock is sustained (or if such corporation has not been in existence for 5 taxable years ending before such date, during the period of its taxable years ending before such date, or if such corporation has not been in existence for one taxable year ending before such date, during the period such corporation has been in existence before such date), derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this subparagraph only to the extent of gains therefrom); except that this subparagraph shall not apply with respect to any corporation if, for the period referred to, the amount of the deductions allowed by this chapter (other than by sections 172, 242, 243, 244, and 245) exceed the amount of gross income.

Such term does not include stock if issued (pursuant to the plan referred to in subparagraph

order to qualify as stock issued pursuant to that section, such stock must be issued subsequent to the adoption of a written plan to offer such stock.

Respondent maintains that none of the stock qualifies as section 1244 stock, having been issued prior to the adoption of any such plan. It is his position that under Missouri corporation law,[3] the preincorporation subscriptions were accepted and petitioners became shareholders when the corporation came into existence on June 17. Consequently, he argues, the stock was issued on the date of incorporation, 4 days prior to the adoption of the section 1244 plan on June 21.

In our view, respondent's argument overlooks an important consideration. At the time the articles of incorporation were filed, petitioners fully intended for their stock to issue under section 1244. They had previously discussed the matter with their accountant and had informed him that this was the course they wished to pursue. It is clear that this idea was fully framed in petitioners' minds as part of a plan conceived prior to the formation of the corporation and was in no way an afterthought on their part. In fact, it was their intention that the stock subscriptions be conditioned on the adoption of a section 1244 plan.

In accordance with their intentions, we therefore hold that the stock did not issue before the plan was adopted on June 21. Sec. 1.1244(c)-1(c)(3), Income Tax Regs.[4]

Furthermore, we find the decision in *Wesley H. Morgan,* 46 T.C. 878 (1966), on which respondent herein relies, to be readily distinguishable. In that case the section 1244 plan was adopted approximately 1 month subsequent to the time the corporation was formed and the stock paid for, after it had already become apparent that the corporation could not operate profitably with its then-existing capital. Moreover, the preincorporation subscriptions then in issue were not conditioned upon adoption of

----

(A)) after a subsequent offering of stock has been made by the corporation.

[3] The Missouri Revised Statutes, sec. 351.175 (1959), provide, in part:

"The filing of the articles of incorporation by the secretary of state shall constitute acceptance by the corporation of all existing subscriptions to its shares, and thereupon subscribers for shares, or their assigns, shall be deemed to be shareholders of the corporation. * * *"

[4] Sec. 1.1244(c)-1(c)(3). Stock subscribed for prior to the adoption of the plan, including stock subscribed for prior to the date the corporation comes into existence, may be considered issued pursuant to a plan adopted by the corporation if the stock is not in fact issued prior to the adoption of such plan.

a plan. *Wesley H. Morgan, supra* at 891 n. 8.[5]

We therefore believe petitioners' investment to be wholly consistent with the requirements and purposes of section 1244, which was designed to encourage the flow of new funds into small business. Accordingly, we hold that petitioners are entitled to deduct, as a loss from the sale or exchange of an asset which is not a capital asset, the losses claimed by them on the worthlessness of those shares.

*Decision will be entered for the petitioners.*

---

[5] See also *William O. Hayden,* 52 T.C. 1112, 1126 n. 5 (1969), wherein we noted a similar distinction.

