JOHN C. BONACCI and ANNETTE M. BONACCI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bonacci v. Commissioner
Docket No. 8572-74
United States Tax Court
T.C. Memo 1977-172; 1977 Tax Ct. Memo LEXIS 266; 36 T.C.M. (CCH) 713; T.C.M. (RIA) 770172; June 8, 1977, Filed John C. Bonacci, pro se. Marc A. Feller, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year 1972 in the amount of $1,754.63.
Due to concessions made by the parties, only three issues remain for our determination: (1) Whether petitioners are entitled to an ordinary loss deduction under section 1244 [1] for the value of the stock they owned in Hessian Run Development Corporation which became worthless in 1972; (2) whether petitioners are entitled to an ordinary loss deduction in the taxable year 1972 as a business bad debt under section 166 for a loss sustained *268 when a note received from Hessian Run Development Corporation became worthless; and (3) the effect, if any, of the respondent's failure to give the petitioners a district or appellete conference as required by respondent's procedural rules. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners are John C. Bonacci and Annette M. Bonacci, husband and wife, who resided in Cherry Hill, New Jersey, at the time the petition was filed in this case. Petitioners filed a joint Federal income tax return for the taxable year 1972, using the cash receipts and disbursements method of accounting, with the district director of internal revenue at Holtsville, New York. Petitioner has been a chemical engineer since 1957 and was employed by Mobile Research and Development Corporation throughout 1972. [2] In 1968, petitioner informed his stock broker, Frank Zizmont (hereinafter referred to as Zizmont) that he was interested in new forms of investment. Zizmont then informed petitioner that a corporation named Hessian Run Development Corporation *269 (hereinafter referred to as Hessian Run) was to be formed and offered him an opportunity to invest in it. Hessian Run was incorporated in New Jersey on May 13, 1968. On February 18, 1969, petitioner executed a subscription agreement, to acquire 1,000 shares of Hessian Run stock. On that day petitioner mailed the subscription agreement and a check for $5,000 as payment in full of the purchase price.John N. White, the accountant for Hessian Run, recorded petitioner's payment as a credit to the corporation's capital account by an entry made on February 28, 1969. A total of $80,000 was recorded as received from petitioner and other individuals between February 28 and March 13, 1969. A board of directors' meeting of Hessian Run was held in Woodbury, New Jersey on March 26, 1969. The directors adopted a resolution to raise additional capital by issuing 16,000 shares of common stock at $5 per share. This offering was structured to comply with the requirements of section 1244, and the parties agree that the minutes of *270 this meeting meet the requirements for a valid plan under section 1244. As of the date of this meeting, March 26, 1969, Hessian Run was a small business corporation as that term is defined by section 1244(c)(2). Petitioner received a temporary stock certificate dated March 28, 1969, for the 1,000 shares in Hessian Run to which he had subscribed. On October 1, 1970, petitioner invested an additional sum of $3,000 in Hessian Run in exchange for a note convertible into common stock. The corporation subsequently repaid $600 of this amount leaving a $2,400 unpaid balance. Petitioner never exercised the conversion privilege and the parties agree that the note does not qualify as section 1244 stock. By December 29, 1972, Hessian Run had become insolvent and its stock and securities became worthless. Petitioner reported the $5,000 loss on the worthless Hessian Run stock, and the $2,400 loss on the worthless Hessian Run note as miscellaneous deductions, deductible in full from ordinary income, on his 1972 Federal income tax return. Respondent disallowed these deductions in a statutory notice of deficiency. Respondent denied petitioner's request for a district or appellate level conference *271 prior to sending the statutory notice of deficiency. OPINION The principal issue for our decision is whether petitioner is entitled to ordinary loss treatment under section 1244 for his Hessian Run stock that became worthless in 1972. Section 165(g) treats a loss sustained when a security becomes worthless as a "sale or exchange", generally producing a capital loss subject to the limitations imposed by section 1211. However, section 1244 [3] permits an individual or a partnership to treat a loss on the sale or exchange of section 1244 stock as a deduction from ordinary income up to $25,000 (or $50,000 for a couple filing a joint return). *272 This dispute centers on the requirement that section 1244 stock be issued "pursuant" to a plan adopted in writing by the corporation to offer such stock. Section 1244(c)(1)(A) and (B). [4]
Respondent contends that the stock was issued on February 28, 1969, but a plan meeting the requirements of section 1244 was not adopted until March 26, 1969.Since the plan was adopted some time after the stock was issued, respondent argues, the stock could not have been issued "pursuant" to the plan. In addition to arguing for a different sequence, petitioner asserts that if the events are reasonably contemporaneous, stock issued before the plan was adopted may nevertheless be issued "pursuant" to the plan within the meaning of section 1244. On the record before us, we agree with respondent. We focus first on when the stock was issued. Since section 1244 does not itself define "issued" as the term is used therein, this *273 Court has assumed "that it was used in its ordinary corporate sense." Morgan v. Commissioner,46 T.C. 878, 890 (1966). In the past, we have looked to the date on which the stock was paid to determine when it was issued. Morgan,supra, at 890; Hayden v. Commissioner,52 T.C. 1112 (1969). Cf. Marsh v. Commissioner,12 T.C. 1083 (1949). This is in accord with generally recognized principles of corporate law under which a subscriber of corporate stock becomes a stockholder as soon as his subscription is accepted by the corporation. The stock certificate does not convey rights as such but is merely evidence of a shareholder's rights. American Pig-Iron Storage Co. v. State Bd. of Assessors,56 N.J.L. 389, 29 A. 160 (1894); 11 Fletcher, Cyclopedia of the Law of Private Corporations, sec. 5094, p. 58, and sec. 5159, p. 258 (1971 rev.). Applying these principles to the facts of this case, it is clear that the Hessian Run stock that was issued on February 18, 1969, when petitioner executed the subscription agreement and paid for it with his check. It was at this point that he became entitled to all *274 the rights of a shareholder under state law including the right to compel Hessian Run to deliver a stock certificate evidencing his rights. [5]
This is in accord with the understanding of the parties. On petitioner's income tax return for the year in issue he listed the stock as acquired on February 28, 1969, and a similar date is reflected in the corporate records. Other than speculation about possible errors, petitioner has offered nothing to substantiate an alternate date or to overcome the normal presumption that regularly kept corporate records are accurate. The record is crystal clear that a section 1244 plan was not adopted until the meeting of Hessian's board of directors on March 26, 1969. No evidence of any *275 kind was introduced suggesting that any informal or formal consideration was given to a section 1244 plan at an earlier date. [6] Petitioner suggests the corporate minutes may be misdated, and the meeting at which the plan was adopted may actually have been held at an earlier date. Again we are offered only petitioner's speculation as proof, of little value in light of his admission that he had no knowledge of the existence or effect of a section 1244 plan prior to 1972 when the Hessian stock became worthless. We have no alternative but to rely on the corporate records. We are fortified in this decision by a waiver of notice of a special board of directors' meeting, which was executed on March 26, 1969, and referred to the above meeting as occurring at 2 p.m. on that same day. At bottom, petitioner suggests that whether stock is "issued pursuant" to a section 1244 plan requires an analysis of the terms "issued" and "pursuant" in light of the strong desire manifested by Congress to assist small business in enacting section 1244. He suggests a strict temporal *276 sequence is too rigid an analytical framework. [7] However, the circumstances of this case do not require that we pass on the merits of petitioner's position. On the record before us, it is impossible to say that the corporate plan was anything other than a belated after-thought that occurred to the board of directors after the new capital had been raised. We must also determine the character of petitioner's loss sustained when a $3,000 convertible note, received to secure a loan to Hessian Run in October of 1970, became worthless in 1972 after only $600 had been repaid.Specifically, we must decide whether the loan was *277 made "in connection with a trade or business of the taxpayer," in which case the loss would be fully deductible under section 166(a); or whether the loss was due to a nonbusiness debt, and hence deductible as a short term capital loss under section 166(d). [8]
The character of a debt turns on the relationship of the resulting loss to the taxpayer's trade or business. The relationship must be proximate, and applying this criteria we look to dominant motive. Income Tax Regs. sec. 1.166-5(b)(2). United States v. Generes,405 U.S. 93, 103 (1972). After considering the record as a whole, we conclude that petitioner's dominant motive in making the loan was to protect his original $5,000 stock investment. Petitioner testified that the loan was made to save the business and that his original investment was an important factor in his decision to make the loan. Petitioner also stated both on his income tax return and in his petition before this Court that the loan was made to protect the original investment. Although *278 petitioner had made investments in stocks before, his principal occupation during this period was as a senior research chemical engineer for Mobile Oil Corporation and he had never made a loan to a corporation before. In Boissevain v. Commissioner,17 T.C. 325 (1951) and again in Estate of Palmer v. Commissioner,17 T.C. 702 (1951), this Court held that loans made by shareholders to protect an original investment were not made as part of the shareholder's trade or business where, as here, the taxpayer was not engaged either in loaning money to corporations or in developing businesses for resale as a regular business. Petitioner claims that he was engaged in the business of promoting the Hessian Run corporation. However, there is no evidence that he contributed anything other than capital or sought a return different from the normal investor's return on risk capital. He was not in the business of promoting Hessian Run for sale, and did not participate in its development other than as a minor shareholder. In sum, petitioner's interest in Hessian Run was that of an investor who loaned money to protect his original investment and sought only the *279 normal investor's return. As such, he is not entitled to an ordinary loss deduction under section 166(a) for the loss sustained on his loan, but may claim a section 166(d) short term capital loss deduction. Finally, petitioner contends he must prevail in any event due to respondent's failure to provide him with a district or appellate level conference prior to issuing the statutory notice of deficiency. However, a long line of cases hold that the respondent's procedural rules relative to these conferences merely direct the Internal Revenue Service's day-to-day operations but are "directory and not mandatory in character." Montgomery v. Commissioner,65 T.C. 511, 522 (1975). Accord: Rosenberg v. Commissioner,450 F.2d 529 (10th Cir. 1971), affirming a Memorandum Opinion of this Court; Luhring v. Glotzbach,304 F.2d 560, 564 (4th Cir. 1962); Cataldo v. Commissioner,60 T.C. 522 (1973), affd. per curiam 499 F.2d 550 (2nd Cir. 1974); Mead Realty Co. v. Commissioner,21 B.T.A. 1062 (1931). Nor does the failure of respondent to grant petitioner these hearings constitute such arbitrary action *280 as to result in a denial of due process. Rosenberg v. Commissioner,supra.
Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise specified.↩
2. Since Annette M. Bonacci is a party to this action by reason of filing a joint return with her husband, John C. Bonacci will be referred to as petitioner.↩
3. The relevant portions of this section provide: SEC. 1244. LOSSES ON SMALL BUSINESS STOCK. (a) General Rule.--In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset. * * *
(c) Section 1244 Stock Defined.-- (1) In General.--For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if-- (A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, * * *
Such term does not include stock if issued (pursuant to the plan referred to in subparagraph (A)) after a subsequent offering of stock has been made by the corporation. * * *↩
4. The regulations rather than the statute require the plan to be in writing. See sec. 1.1244(c)-1(c), Income Tax Regs.We have held this regulation to be a reasonable interpretation of the statute. Morgan v. Commissioner,46 T.C. 878, 889↩ (1966).
5. N.J. Stat. Ann. sec. 14A:7-5 (2) (1969) which was effective during 1969 provided that: When payment of the full consideration for which shares are to be issued is received by the corporation, the subscriber shall thereupon become entitled to all the rights and privileges of a holder of such shares, including the registration in his name of a certificate representing them, and such shares shall be fully paid and nonassessable.↩
6. This fact alone distinguishes the facts before us from Reddy v. Commissioner,66 T.C. 335↩ (1976).
7. Respondent recently contended in Reddy v. Commissioner,supra,↩ that a plan adopted just 4 days after the stock subscription was accepted was fatal under section 1244, even though the plan had been considered extensively at an earlier date. If the taxpayer gets the wrong foot ever so slightly ahead of the other, respondent declares a fatal foot fault, even though both feet are moving together.Whether section 1244 requires the skill of a ballet dancer is doubted; in any event, it is a question we need not reach on the facts before us.
8. Sec. 165(g) may also require that the loss be taken as a capital loss. However, this was not argued by the parties and we do not consider it here.↩