Patrick FEENEY, Plaintiff–Appellant,

v.

PORT AUTHORITY TRANS–HUDSON
CORPORATION, Defendant–Appellee.

No. 711, Docket 88–7797.

United States Court of Appeals,
Second Circuit.

Argued Feb. 8, 1989.

Decided April 26, 1989.

Richard W. Miller, Islip, N.Y. (Peter M.J. Reilly, O'Hagan & Reilly, Islip, N.Y., of counsel), for plaintiff-appellant.

Arthur P. Berg, New York City, (Joseph Lesser, Anne M. Tannenbaum, New York City, of counsel), for defendant-appellee.

Before KEARSE and WINTER, Circuit Judges, and SWEET, District Judge.*

WINTER, Circuit Judge:

The sole issue in this case is whether the Port Authority of New York and New Jersey ("Port Authority") is immune from suit in federal courts by virtue of the Eleventh Amendment.[1]  We conclude that the Elev-

---

* The Hon. Robert W. Sweet, United States District Judge for the Southern District of New York, sitting by designation.

1. The Eleventh Amendment provides
   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

enth Amendment immunity either does not extend to the defendant or has been waived.

■ The appellant, Patrick Feeney, is an employee of the Port Authority Trans-Hudson Corporation ("PATH"), which operates rail facilities between New York and New Jersey and is a wholly-owned subsidiary of the Port Authority. Feeney brought this action for damages for personal injuries allegedly suffered in the course of his employment. He asserted these claims under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.* (1982), the Boiler Inspection Act, 45 U.S.C. §§ 22 *et seq.* (1982), and the Safety Appliance Act, 45 U.S.C. §§ 1 *et seq.* (1982). PATH moved pursuant to Fed.R.Civ.P. 12(c) for dismissal of the complaint for lack of subject matter jurisdiction on the ground that PATH enjoys immunity from suit in federal courts because of the Eleventh Amendment. Judge Ward granted PATH's motion, 693 F.Supp. 34, and Feeney appeals.

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Eleventh Amendment has been construed to prevent a state from being sued in federal court by one of its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

2. Feeney also claims that Congress abrogated PATH's Eleventh Amendment immunity when it enacted the FELA. We disagree. The effect of the FELA on PATH's Eleventh Amendment immunity is governed largely by *Welch v. Texas Dep't of Highways and Public Transportation,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). In that decision, the Supreme Court stated that abrogation of a state's Eleventh Amendment immunity requires that Congress "express[ ] in unmistakable statutory language its intention to allow States to be sued in federal court ...," *Welch,* 107 S.Ct. at 2947, and a " 'general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment.' " *Id.* (citation omitted). Applying this rationale to the Jones Act, the Court held that the statutory language extending that Act to " 'any seaman who shall suffer personal injury in the course of his employment,' ... does not authorize suits against the States in federal court." *Id.* (citations omitted) (emphasis omitted).

The Court did not, however, limit its opinion to the Jones Act. Instead, it went on to overrule *Parden v. Terminal Railway of Ala. State Docks*

Feeney claims that the Port Authority is not a state agency for Eleventh Amendment purposes and, in the alternative, that, if it is such a state agency, its Eleventh Amendment immunity has been waived.[2] We agree with both arguments and reverse.

■ The claim that the Port Authority is not a state agency for Eleventh Amendment purposes requires that we examine it in some detail. The Port Authority is "a body corporate and politic" created in 1921 by an interstate compact between New York and New Jersey. The compact was approved by the United States Congress. N.Y. Unconsol. Laws § 6404 (McKinney 1979) and N.J.Stat.Ann. § 32:1–4 (West 1963 & Supp.1988). The Port Authority is to "be regarded as the municipal corporate instrumentality of the two states for the purpose of developing the port [of New York] ...," N.Y. Unconsol. Laws § 6459 (McKinney 1979) and N.J.Stat.Ann.

*Dep't,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233, *reh'g denied,* 377 U.S. 1010, 84 S.Ct. 1903, 12 L.Ed.2d 1057 (1964), a decision holding that Alabama had waived its Eleventh Amendment immunity when it decided to enter the railroad business subsequent to Congressional enactment of the FELA. The *Welch* Court clearly indicated that *Parden* should not be relied upon either to qualify or to limit the Court's decision in *Welch.* The *Welch* Court thus was at pains to repudiate *Parden's* conclusion that the FELA language applying it to "every common carrier by railroad" evidenced a Congressional intent to abrogate the Eleventh Amendment immunity. The Court stated that *Parden* reflected a "mistaken[ ] reli[ance] on cases holding that general language in the Safety Appliance Act ... and the Railway Labor Act ... made those statutes applicable to the *States." Welch,* 107 S.Ct. at 2947 (citations omitted) (emphasis added). The *Welch* Court further stated that *"Parden's* discussion of congressional intent to negate Eleventh Amendment immunity is no longer good law." *Id.* 107 S.Ct. at 2948. Finally, the Court held that "to the extent that *Parden v. Terminal Railway, supra,* is inconsistent with the requirement that an abrogation of Eleventh Amendment immunity by Congress must be expressed in unmistakably clear language, it is overruled." *Id.* (footnote omitted). Because the pertinent language of the FELA is no more specific than the language of the Jones Act regarding the Eleventh Amendment, a claim that the FELA abrogates PATH's Eleventh Amendment immunity is no longer sustainable.

§ 32:1–33 (West 1963 & Supp.1988), and is authorized to:

> purchase, construct, lease and/or operate any terminal or transportation facility within said district; and to make charges for the use thereof: and for any of such purposes to own, hold, lease and/or operate real or personal property, to borrow money and secure the same by bonds or by mortgages upon any property held or to be held by it.

(footnotes omitted). N.Y. Unconsol. Laws § 6407 (McKinney 1979) and N.J.Stat.Ann. § 32:1–7 (West 1963).

The powers of the Port Authority are exercised by twelve commissioners, six being selected by each of the participating states. N.Y. Unconsol. Laws § 6405 (McKinney 1979) and N.J.Stat.Ann. § 32:1–5 (West 1963). The Commissioners' actions are in turn subject to veto by the governor of either state. *See* N.Y. Unconsol. Laws § 7151 (McKinney 1979) and N.J. Stat.Ann. §§ 32:2–6 *et seq.* (West 1963 & Supp.1988). The compact states that "[t]he [P]ort [A]uthority shall not pledge the credit of either state except by and with the authority of the legislature thereof." N.Y. Unconsol. Laws § 6408 (McKinney 1979) and N.J.Stat.Ann. § 32:1–8 (West 1963). *See also* 1930 Report of the Att'y Gen. 124 (bonds issued by Port Authority are not obligations of the state of New York). In the event the Port Authority's revenues are inadequate to meet its expenses, each state is obligated only to "appropriate, in equal amounts, annually, for the salaries, office and other administrative expenses, such sum or sums as shall be recommended by the [P]ort [A]uthority and approved by the governors of the two states, but ... only to the extent of one hundred thousand dollars in any one year." N.Y. Unconsol. Laws § 6416 (McKinney 1979) and N.J.Stat.Ann. § 32:1–16 (West 1963). The Port Authority may not incur any obligations for such administrative expenses until such appropriations are made. N.Y. Unconsol. Laws § 6418 (McKinney 1979) and N.J.Stat.Ann. § 32:1–18 (West 1963).

We conclude that the Port Authority, and therefore PATH, is not a state agency for Eleventh Amendment purposes. In *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Supreme Court held that the Tahoe Regional Planning Agency ("TRPA"), a bi-state authority established by California and Nevada to regulate the development of the Lake Tahoe region, was not a state agency for purposes of Eleventh Amendment immunity. The Court stated:

> By its terms, the protection afforded by [the Eleventh] Amendment is only available to "one of the United States." It is true, of course, that some agencies exercising state power have been permitted to invoke the Amendment in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself. But the Court has consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a "slice of state power."
>
> If an interstate compact discloses that the compacting States created an agency comparable to a county or municipality, which has no Eleventh Amendment immunity, the Amendment should not be construed to immunize such an entity. Unless there is good reason to believe that the States structured the new agency to enable it to enjoy the special constitutional protection of the State themselves, and that Congress concurred in that purpose, there would appear to be no justification for reading additional meaning into the limited language of the Amendment.

*Lake Country,* 440 U.S. at 400–01, 99 S.Ct. at 1176–77 (footnotes omitted).

In denying the TRPA the protection of the Eleventh Amendment, the Court cited the following factors: (i) the compact referred to the TRPA as a political subdivision of the states; (ii) six of the ten governing members of TRPA were appointed by counties and four by the states; (iii) TRPA's funding was provided by counties, not by the states; (iv) TRPA's function, the regulation of land, is traditionally a func-

tion of local, not state, government; (v) the states had no veto over the actions of the TRPA; and (vi) TRPA's obligations were not binding on the states. *Id.* at 401–02, 99 S.Ct. at 1177–78.

Taking factors (i)-(v) into account, it appears that the case for denying Eleventh Amendment immunity to TRPA was stronger than is the case for denying it to PATH. Favoring non-application of the Eleventh Amendment immunity to PATH is the fact that the compact between New York and New Jersey describes the Port Authority as a "municipal corporate instrumentality," N.Y.Unconsol.Laws § 6459 (McKinney 1979) and N.J.Stat.Ann. § 32:1–33 (West 1963), language consistent with its being a political subdivision. Moreover, the Port Authority is to be self-sustaining financially, and its functions are localized and focus only on the port of New York. Favoring application are the facts that all of the Port Authority Commissioners are appointed by the states, and the governors of the two states have a veto over the Commissioners' actions.

We do not believe, however, that the differences between the Port Authority and the TRPA constitute the requisite "good reason," *Lake Country*, 440 U.S. at 401, 99 S.Ct. at 1177, to conclude that the Port Authority was intended to be a state agency for Eleventh Amendment purposes. In particular, we believe that factor (vi), whether liability will place the state treasury at risk, although not exclusively determinative, is the single most important factor. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38 (2d Cir.1977); *see also* Comment, *Eleventh Amendment Immunity and State-owned Vessels*, 57 Tul.L.Rev. 1523, 1528 (1983) (in determining whether to extend the Eleventh Amendment to a state agency "[t]he essential, but not exclusive, test is whether a monetary judgment against the agency would be satisfied out of the state treasury") (footnotes omitted). In cases where doubt has existed as to the availability of Eleventh Amendment immunity, the Supreme Court has emphasized the exposure of the state treasury as a critical factor. In *Edelman v. Jordan*, 415 U.S. 651, 94

S.Ct. 1347, 39 L.Ed.2d 662, *reh'g denied*, 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974), for example, the Supreme Court stated that "[i]t is ... well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment.... [T]he rule [that] has evolved [is] that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* 415 U.S. at 663, 94 S.Ct. at 1355 (citations omitted); *see also Lake Country*, 440 U.S. at 400–01, 99 S.Ct. at 1176–77.

We believe it clear that a judgment against PATH would not be enforceable against either New York or New Jersey. The Port Authority is explicitly barred from pledging the credit of either state or from borrowing money in any name but its own. Even the provision for the appropriation of moneys for administrative expenses up to $100,000 per year requires prior approval by the governor of each state and an actual appropriation before obligations for such expenses may be incurred. Moreover, the phrase "salaries, office and other administrative expenses" clearly limits this essentially optional obligation of the two states to a very narrow category of expenses and thus also evidences an intent to insulate the states' treasuries from the vast bulk of the Port Authority's operating and capital expenses, including personal injury judgments. No provision commits the treasuries of the two states to satisfy judgments against the Port Authority, therefore. We believe that this insulation of state treasuries from the liabilities of the Port Authority outweighs both the methods of appointment and gubernatorial veto so far as the Eleventh Amendment immunity is concerned.

We realize that our holding creates a conflict between ourselves and the Third Circuit regarding PATH, *see Port Authority Police Benevolent Ass'n, Inc. v. Port Authority of New York and New Jersey*, 819 F.2d 413 (3d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987), that can be resolved only by the

Supreme Court. That decision, however, was based on the Third Circuit's understanding that in the event that "a judgment were entered against the Authority that was serious enough to deplete its resources, the Authority would be able to go to the state legislatures in order to recoup the amount needed for its operating expenses." *Port Authority Police Benevolent Ass'n,* 819 F.2d at 416. To the extent that this statement implies that the states *must* make such an appropriation, it appears to be in error. Under the compact, states are obligated to provide funds for Port Authority administrative expenses up to $100,000 only if their respective governors approve the request. Judgments in the present action thus cannot lead to a depletion of state treasuries without gubernatorial consent.

Although we would normally be most reluctant to create a conflict with another circuit on a close issue, we believe that the issue is not close in light of legislation enacted by New York and New Jersey stating that the Port Authority may be sued *in federal courts.* Even if the Port Authority enjoys Eleventh Amendment immunity, therefore, it has been waived. We turn now to that issue.

■ In 1950 and 1951 New York and New Jersey respectively enacted legislation that "consent[ed] to suits, actions or proceedings of any form or nature at law, in equity or otherwise ... against the [Port Authority] ..." N.Y.Unconsol.Laws § 7101 (McKinney 1979) and N.J.Stat.Ann. § 32:1–157 (West 1963). "Venue" for actions against the Port Authority consented to by this legislation, which include actions sounding in tort, expressly includes the federal courts. N.Y.Unconsol.Laws § 7106 (McKinney 1979) and N.J.Stat.Ann. § 32:1–162 (West 1963). The provision states in pertinent part:

> venue in any suit, action or proceeding against the [P]ort [A]uthority shall be laid within a county or a judicial district, established by one of said states or by the United States, and situated wholly or partially within the port of New York district.

■ We acknowledge that the standard for determining whether a state has waived its Eleventh Amendment immunity is strict. In *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 239–40, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985), *reh'g denied,* 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696 (1985), the Supreme Court stated that "a State will be deemed to have waived its immunity 'only where stated "by the most express language or by such over-whelming implication from the text as [will] leave no room for any other reasonable construction."'" (citation omitted). *See also Edelman v. Jordan,* 415 U.S. at 673, 94 S.Ct. at 1361.

PATH argues that the language of the legislation in question is not sufficiently explicit to satisfy the test set out in *Atascadero State Hospital* and *Edelman.* Relying upon the Supreme Court's statement that "'[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued,'" *Welch v. Texas Dep't of Highways and Public Transportation,* 483 U.S. 468, 107 S.Ct. 2941, 2946, 97 L.Ed.2d 389 (1987) (citation omitted) (emphasis in original), PATH argues that the legislation governing the Port Authority's amenability to suit merely reflects the states' intention to waive the Port Authority's claim to sovereign immunity rather than its claim to Eleventh Amendment immunity.

PATH's argument, however, focuses solely upon the provisions allowing suits to be brought against the Port Authority, N.Y.Unconsol.Laws § 7101 (McKinney 1979) and N.J.Stat.Ann. § 32:1–157 (West 1963), and simply ignores the language of the legislation quoted above that expressly states that such suits may be brought in federal courts. Moreover, what legislative history there is indicates that this result was consciously intended. The 1950 New York State Legislative Annual thus refers to *Howell v. The Port of New York Authority,* 34 F.Supp. 797 (D.N.J.1940) as a decision that Section 7106 was designed to overturn. 1950 New York State Legislative Annual 203–04. In *Howell,* the court granted a motion to dismiss based on sov-

ereign immunity and the Eleventh Amendment. Although the decisions cited in support of the dismissal appear to be exclusively sovereign immunity cases, *Howell* concluded that the Port Authority was a state agency rather than a political subdivision, a conclusion that would support immunity under the Eleventh Amendment. 34 F.Supp. at 800–01.

■ We concede that the statute's use of the term "venue" is somewhat anomalous in the Eleventh Amendment context. We conclude, however, that the use of that term in no way undermines our conclusion that the provision evidences an intent to allow the Port Authority to be sued in the designated federal courts and is thus an explicit waiver, albeit partial, of the Eleventh Amendment. If such an intent is not attributed to the provision, then the provision is entirely meaningless. PATH's sole attempt to give meaning to the language in question is to argue that it relates to actions that may be brought in federal court where Congress has abrogated the Eleventh Amendment. PATH has failed to provide specific examples of any such cases, however. In any event, this argument is wholly unconvincing. First, it is inconsistent with the Legislative Annual's reference to *Howell*. Second, where Congress has abrogated the Eleventh Amendment immunity, states hardly need pass legislation waiving that abrogated immunity and have no power to determine the proper "venue" for actions brought pursuant to the abrogation.

We conclude, therefore, that the statutory provision establishing "venue" for suits against the Port Authority in United States courts is a waiver of the Eleventh Amendment.[3]

Reversed and remanded.

---

**3.** PATH also relies on *Florida Dep't of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (per curiam), *reh'g denied,* 451 U.S. 933, 101 S.Ct. 2008, 68 L.Ed.2d 319 (1981), which involved a suit brought by an association of nursing homes against an agency of the state of Florida. The association sought retroactive relief for the state's previous failure to reimburse the nursing homes as required by the state's participation in the federal Medicaid program. The Supreme Court held that the Eleventh Amendment barred the suit. The Court stated that: (i) "the 'mere fact that a State participates in a program through which the Feder-

al Government provides assistance ... is not sufficient to establish consent on the part of the State to be sued in the federal courts'"; (ii) a "State's general waiver of sovereign immunity ... 'does not constitute a waiver by the State of its constitutional immunity under the Eleventh Amendment from suit in federal court'"; and (iii) "the fact that the [State] agreed explicitly to obey federal law in administering the program can hardly be deemed an express waiver of Eleventh Amendment immunity." *Id.* 450 U.S. at 150, 101 S.Ct. at 1034 (citation omitted). We fail to see the relevance of that holding in the context of a provision that expressly allows actions to be brought in federal courts.