Daniel J. MULLIN, Plaintiff,

v.

P & R EDUCATIONAL SERVICES, INC.,
and the New York State Department of
Motor Vehicles, Defendants.

No. 95–CV–2334 (JS).

United States District Court,
E.D. New York.

Sept. 30, 1996.

Daniel J. Mullin, Port Washington, NY,
pro se.

P & R Educational Services, Inc., Rock-
ville Centre, NY, pro se.

Gary E. Lesch, Assistant A.G., Attorney
General's Office, New York City, for Defen-
dant DMV.

*MEMORANDUM AND ORDER*

SEYBERT, District Judge:

Plaintiff Daniel Mullin brings the instant action pursuant to 42 U.S.C. § 1983 alleging violations of his First Amendment and Fourteenth Amendment rights by defendants New York State Department of Motor Vehicles ("DMV") and P & R Educational Services Inc. ("P & R"). Pending before the Court is a motion by DMV to dismiss the complaint as against DMV on the ground that it is barred by the Eleventh Amendment. Similarly, P & R submitted an affidavit claiming that if the complaint is barred by the Eleventh Amendment as against DMV, it also should be barred as against P & R. Also pending before the Court is a motion by DMV to dismiss the cross-claims by P & R on the ground that they are barred by the Eleventh Amendment. For the reasons set forth below, DMV's motion to dismiss the complaint and DMV's motion to dismiss the cross-claims by P & R are granted. P & R's motion to dismiss the complaint on Eleventh Amendment grounds is denied.

**RELEVANT FACTS**

Plaintiff admits that he was arrested and plead guilty to a charge of driving while intoxicated. Complaint, Count 2, ¶ 3. Plaintiff was sentenced to three years probation and was fined. In order for plaintiff to obtain driving privileges, plaintiff was required to register with P & R, which administers DMV's Drinking and Driving Program. Complaint, Count II, ¶ 5.

Plaintiff alleges that he was coerced by the DMV to participate in the Drinking and Driving Program. Moreover, plaintiff alleges that the release forms that he had to sign to participate in such program unjustly referred to plaintiff as an alcoholic. Complaint, Count V, ¶ 6. Additionally, plaintiff claims that he has been forced to undergo treatment which conflicts with his religious and moral beliefs. According to plaintiff, his First Amendment and Fourteenth Amendment rights have been violated as a result of his participation in the Drinking and Driving Program. Complaint, Count V, ¶ 6.

Plaintiff claims that as a result of the signing of such forms and being forced to undergo such treatment, he has suffered damages in an amount in excess of $630,-000.00 for "lost earnings, emotional trauma, damages to his reputation and money spent on therapists." Complaint, Count V, ¶ 8.

**DISCUSSION**

*I. MOTIONS TO DISMISS COMPLAINT ON ELEVENTH AMENDMENT IMMUNITY GROUNDS*

Defendants DMV and P & R move to dismiss the complaint on the ground that the Court lacks subject matter jurisdiction. Specifically, defendants alleges that the Court does not have authority or competence to hear and decide the case because plaintiff's claim is barred by the Eleventh Amendment.

The Eleventh Amendment of the United States Constitution bars suits against the State in federal court unless the State consents to be sued, or Congress enacts legislation overriding the State's Eleventh Amendment immunity.[1] *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). Although the Eleventh Amendment by its terms does not bar federal courts from hearing suits brought against a State by its own citizens, the Supreme Court " 'has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.' " *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (quoting *Edelman v. Jordan*, 415 U.S. 651, 652–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974)). This bar exists whether the relief sought is legal or equitable. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

Here, there has been no showing that New York State has waived its immunity to suit;

---

1. The Eleventh Amendment provides:

   The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

   *U.S. Const. amend XI.*

nor has Congress enacted legislation specifically overriding the State's immunity to suit. *Jerrell v. State of New York*, No. CV–94–3036 (CPS), 1996 WL 19173, *2 (E.D.N.Y., Jan. 12, 1996); *see Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 39–40 (2d Cir.1977) (proclaiming that New York State has not waived its sovereign immunity and therefore is protected from suit in federal court for a Section 1983 violation). Moreover, because a State is not a "person" within the meaning of § 1983, this provision of the Civil Rights Act has not abrogated the sovereign immunity of the States pursuant to the Eleventh Amendment. *See Will*, 491 U.S. 58 at 64, 71, 109 S.Ct. 2304 at 2308, 2312 (1989); *see also Richards v. New York State Dept. of Correctional Servs.*, 572 F.Supp. 1168, 1172 (S.D.N.Y.1983) (granting a motion to dismiss because the New York State Department of Corrections is not a "person" within the meaning of the Civil Rights Act and thus not a proper party). Accordingly, if plaintiff had sued New York State, New York State would be immune from suit.

■ The sovereign immunity of the Eleventh Amendment extends to "state officers who are sued in [his or her] official capacity since a suit brought against 'a state official in [his or her] official capacity is not a suit against the official but rather a suit against the official's office.'" *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y.1996) (quoting *Will*, 491 U.S. at 71, 109 S.Ct. at 2312). As such, it is well established that a defendant's personal involvement in the alleged constitutional violation is a prerequisite to the imposition of damages in a § 1983 claim. *See, e.g., Monell v. Department of Social Services*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978); *Rizzo v. Good*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 604–05, 46 L.Ed.2d 561 (1976); *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065–67 (2d Cir. 1989); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987); *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977); *Respress v. Coughlin*, 585 F.Supp. 854, 859–60 (S.D.N.Y.1984). Under the law of the Second Circuit, there are four ways in which a supervisory official may be personally involved in a § 1983 violation: (1) he or she may have directly participated in the infraction or be directly involved through ordering that the action be taken; (2) he or she may fail to remedy a wrong after learning of the violation; (3) he or she may have created or allowed a policy to continue under which the violation occurred; or (4) he or she has been grossly negligent in managing the subordinates who caused the violation. *Williams*, 781 F.2d at 323–24. If, however, the official is not charged in an individual capacity, the § 1983 claim is barred by the doctrine of sovereign immunity.

Finally, the doctrine of sovereign immunity also extends to certain government entities under the "arm of the state" doctrine. *See Gonzales*, 167 F.R.D. at 355. Under this doctrine, sovereign immunity bars suits against entities which are in essence suits against the States. While the jurisprudence over how to apply the 'arm of the state' doctrine has been described as "at best, confused," the Second Circuit has set forth a six factor test to determine whether the entity is protected by the Eleventh Amendment. *Mancuso v. New York State Thruway Auth.*, 86 F.3d 289, 292–93 (2d Cir.1996) (citing *Feeney v. Port Authority Trans–Hudson Corp.*, 873 F.2d 628, 630–31 (1989), *aff'd on other grounds*, 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990)), *petition for cert. filed* (Sept. 11, 1994) (No. 96–381). The six factors, referred to by the Second Circuit as the *Feeney* factors, that the Court must consider include: (1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the State has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the State. *Id.* at 293; *see generally Gray v. Laws*, 51 F.3d 426, 431 (4th Cir.1995) ("[E]ssentially the same broad principles identified by the Court as relevant in the multistate entity context apply also in determining whether, within a single state, a governmental entity is 'state' or 'local' for purposes of the Eleventh Amendment"). If these factors point in different directions, the Court must consider

whether "allowing the entity to be sued in federal court threat[ens] the integrity of the state" and whether it exposes "the state treasury to risk." *Id.* As the Supreme Court has noted, the most salient factor facing the Court in this inquiry is "the vulnerability of the state's purse." *Hess v. Port Authority Trans–Hudson Corp.,* —— U.S. ——, ——, 115 S.Ct. 394, 404, 130 L.Ed.2d 245 (1994).

In the present case, the Department of Motor Vehicles is an "arm of the state". Because the State of New York would be protected by the doctrine of sovereign immunity, the DMV, as an arm of the state, also is entitled to sovereign immunity. Turning to the first factor, the Department of Motor Vehicles was created by state statute as a state agency. N.Y.Veh. & Traf.Law § 200 (McKinney Supp.1996) ("There shall be in the state government a department of motor vehicles."); *see* N.Y. Const. Art. 5, § 2 (McKinney 1987). As such, the first factor tips in favor of Eleventh Amendment immunity.

The second *Feeney* factor requires us to determine who appoints the DMV's members. Under New York State law, the commissioner of motor vehicles is the head of the DMV and the commissioner is appointed by the Governor of New York with the advice and consent of the senate. N.Y.Veh. & Traf. Law § 200 (McKinney Supp.1996). This factor therefore also tips in favor of immunity.

The third factor and fourth factors also tip in favor of immunity. First, the DMV is funded by the State. N.Y.Veh. & Traf.Law § 200 (McKinney Supp.1996) ("The commissioner ... and all other officers and employees of the department shall be paid and allowed their necessary, actual and reasonable expenses incurred in the exercise of their duties. All salaries and expenses of the department shall be paid out of the state treasury...."); *see also* N.Y.State Fin.Law § 91 (McKinney Supp.1996) ("Moneys of the [transportation safety] account, following appropriation by the legislature, shall be available to the department of motor vehicles for services and expenses of transportation safety activities.") Second, the DMV's function is traditionally one of State law. In fact,

Section 1600 of the Vehicle and Traffic Laws provides:

> The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any local law, ordinance, order, rule or regulation in conflict with the provisions of this chapter unless expressly authorized herein. No local authority shall enact or duplicate any provision of this chapter as a local law, ordinance, order, rule or regulation, except that any local authority authorized to supersede any provision of this chapter may enact any such provision in a modified or amended form.

N.Y.Veh. & Traf.Law § 1600 (McKinney Supp.1996). Accordingly, the third and fourth factors favor immunity.

The fifth *Feeney* factor considers whether New York State has veto power over the New York Department of Motor Vehicles' actions. The Court has already noted, in its consideration of the second factor, that the Governor appoints and the Legislature confirms the appointment of the Commissioner, and the Commissioner is appointed for the term of the Governor. N.Y.Veh. & Traf.Law § 200 (McKinney Supp.1996). Additionally, under the New York Constitution, the Governor also has the power to remove the Commissioner. N.Y. Const. Art. 5, § 4 (McKinney 1987). As such, there appears to be some veto power by the State. Additionally, the Court notes that the states, acting through their legislatures, may enlarge the DMV's powers and add to its responsibilities. *See Hess,* —— U.S. at ——–——, 115 S.Ct. at 402–03. As such, it appears that this factor tips slightly in favor of immunity.

Finally, the sixth factor, whether a judgment against the DMV will place the state treasury at risk, also weighs in favor of immunity. As noted above, all of the expenses of the DMV are paid by the State. N.Y.Veh. & Traf.Law § 200 (McKinney Supp.1996) As such, a judgment against the DMV is really a judgment against New York State.

Because the DMV is created by, funded by and essentially controlled by the State, it is a

state agency entitled to the protection afforded by the Eleventh Amendment.

■ Moreover, to the extent that *pro se* plaintiff is alleging a suit against Commissioner Jackson, such suit is also barred by the doctrine of sovereign immunity.[2] There are no allegations in the complaint regarding Jackson's personal involvement in the alleged § 1983 violations. In fact, Commissioner Jackson is not mentioned anywhere in the body of the complaint; rather, his name is listed solely in the caption of the complaint, and in the caption he is designated as the Commissioner, indicating that he is being sued in his official capacity. Because the doctrine of sovereign immunity extends to state officials sued in their official capacity, the complaint is dismissed to the extent that it alleges a § 1983 violation by Commissioner Jackson.

■ Finally, at the present time the Court cannot conclude that the "arm of the state" doctrine affords sovereign immunity to defendant P & R. According to the papers submitted to the Court in conjunction with the instant motion, it appears that P & R is an independent contractor who, pursuant to Article 21 of the New York State Vehicle and Traffic Law, has contracted with the DMV to offer a Drinking and Driving Program. While the Program is affiliated with the State and is expected to follow the guidelines established by the Commissioner of the DMV, the Court cannot conclude that the program is funded by the State. Additionally, the Court cannot conclude that the entity's obligations are binding upon the State. In fact, P & R has cross-claimed against the DMV for indemnification and contribution. Accordingly, it does not appear that a suit against P & R is a suit against the State such that any judgment against P & R would be paid out of the State's treasury. Rather, if a judgment is obtained against P & R, P & R would have to prove that it is entitled to indemnification and contribution from the DMV. Additionally, it appears that any claims by P & R for indemnification and contribution from the DMV result from the contractual relationship between DMV and P & R and not because P & R is a state entity. Accordingly, because the suit against P & R does not appear to effect "the state's purse," the Court will not dismiss the complaint as against defendant P & R on the grounds of sovereign immunity. *See also Warner v. Orange County Dept. of Probation,* 95 F.3d 202 (2d Cir.1996) (holding that quasi-judicial absolute prosecutorial immunity did not extend to municipalities and affirming judgment to plaintiff in § 1983 action who claimed forced participation in AA meeting as condition of probation for drunk driving charge violated First Amendment). If after discovery, however, defendant P & R can prove to the Court, among other things, that it is funded by the State and that a judgment against it would, in reality, be a judgment against the State, the Court will reconsider whether the instant action is barred against P & R by the doctrine of sovereign immunity.

## II. MOTIONS TO DISMISS CROSS-CLAIMS ON ELEVENTH AMENDMENT IMMUNITY GROUNDS

■ Also pending before the Court is defendant DMV's motion to dismiss the cross-claims asserted against it by defendant P & R. DMV contends that the cross-claims also are barred by the doctrine of sovereign immunity.

In *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985), counties sued by an Indian tribe filed an indemnity claim against New York State, and the Supreme Court held that the claim was barred by the Eleventh Amendment. In reaching its decision, the Court first noted that the "counties cross-claim for indemnification raise[d] a classic example of ancillary jurisdiction." *Id.* at 251, 105 S.Ct. at 1260. The Court then proclaimed that "the Eleventh Amendment forecloses, however, the application of nor-

---

**2.** Although the caption of the complaint refers to the "Defendants," the body of the Complaint refers to a single "defendant," primarily referred to as "DMV," not the named defendant, Commissioner Jackson. For the purposes of this motion, because the plaintiff is *pro se* and the complaint is therefore entitled to a liberal construction, the Court will construe the complaint as if there were two defendants, DMV and Commissioner Jackson.

mal principles of ancillary and pendent jurisdiction when claims are press against the State." *Id.* The Court stated:

> As we held in Pennhurst: '[N]either pendant jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment.' The indemnification claim here, whether cast as a question of New York law or federal common law, is a claim against the State for retroactive monetary relief. In the absence of the State's consent, . . ., the suit is barred by the Eleventh Amendment.

*Id.* The Supreme Court went on to conclude that the counties' cross-claim for indemnity by the State raised a question of State law. *Id.* at 252, 105 S.Ct. at 1261. Because the Court failed to find any evidence that the State had waived its constitutional immunity to suit in federal court, the Court held that the indemnity claim was barred by the doctrine of sovereign immunity. *Id.* at 252–53, 105 S.Ct. at 1261; *see also In re Secretary of Dept. of Crime Control,* 7 F.3d 1140, 1147–49 (4th Cir.1993) (finding no waiver of immunity in case for indemnification, even though State statute provided for enforcement of state's payment obligation in state court), *cert. denied,* —— U.S. ——, 114 S.Ct. 2106, 128 L.Ed.2d 667 (1994).

In the present case, P & R's cross-claims against New York State are for indemnity and contribution. These claims arise under New York law. As in *Oneida,* the parties have not submitted any evidence to show that the State has waived its constitutional immunity to suit in federal court, nor has the Court found any evidence to suggest such a waiver. In fact, while New York has waived its sovereign immunity in certain circumstances, "the State has made clear its intent to allow suit against it only in the New York Court of Claims." *Barrett v. United States,* 853 F.2d 124, 130 (2d Cir.1988), *cert. denied,* 488 U.S. 1041, 109 S.Ct. 866, 102 L.Ed.2d 990 (1989); N.Y. Court of Claims Act, Art. 2, § 8 (McKinney 1989). Accordingly, the Court finds that the cross-claims are barred by the Eleventh Amendment.

## CONCLUSION

Because the doctrine of sovereign immunity bars suit against the DMV and Commissioner Jackson, the Court GRANTS defendant DMV's motion to dismiss the complaint as against DMV and Commissioner Jackson. Similarly, the Court GRANTS defendant DMV's motion to dismiss P & R's cross-claims against it. The Court, however, DENIES P & R's application to dismiss the complaint against it with leave to renew consistent with the instructions herein.

SO ORDERED.